810 P.2d 1138

STATE of Idaho, Plaintiff–Respondent,

v.

Curtis Teason JOHNSON, Defendant–Appellant.

No. 18344.

Court of Appeals of Idaho.

May 3, 1991.

Alan E. Trimming, Ada County Public Defender, August H. Cahill, argued, Chief Deputy Public Defender, Boise, for defendant-appellant.

Larry EchoHawk, Atty. Gen., Myrna A.I. Stahman, argued, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

Curtis Teason Johnson was found guilty by a jury of two counts of lewd conduct with a minor under sixteen years of age. I.C. § 18–1508. The court imposed two concurrent twenty-year sentences, with a minimum period of confinement of seven years. Johnson appealed and submitted a motion under I.C.R. 35 for reconsideration of his sentence. The motion was denied by the district court. On appeal, Johnson asserts two errors. First, he argues that the trial court erred when it overruled defense counsel's objection to Dr. Little's opinion testimony that the two children involved had been sexually molested. Second, he argues that the court abused its sentencing discretion. Because we hold that the trial court erred when it allowed Dr. Little to state his conclusion that the children had been sexually molested, we reverse the judgment of conviction and remand this case for a new trial. In view of our holding, we need not address the arguments regarding Johnson's sentences.

## Facts

The state presented evidence at trial that sometime around March 1, 1989, Johnson sexually abused his two ex-stepdaughters. The eldest, Child 1, was ten-years old at the time and the youngest, Child 2, was seven. At the time, Johnson was living at the home of his ex-wife and the children.

Approximately two weeks after the incident, the children brought Johnson's alleged actions to the attention of school authorities. Soon thereafter, the girls were interviewed by Larry Armstrong, a Boise police officer with expertise in child sexual abuse cases. Armstrong also interviewed the mother and gave her the names of five pediatricians experienced in diagnosing child sexual abuse and asked that she have her daughters examined by one of them. The next day, the mother took the children to see Dr. Terry Little, a physician who was not on Armstrong's list and who had little experience with child sexual abuse. Dr. Little interviewed the children and the mother and conducted physical examinations of the two children.

At trial, the children testified that on the night in question Johnson entered their bedroom and sexually abused them by rubbing his penis against their vaginas and buttocks and stroking their pubic areas. The mother, who was not home at the time

of the incident, testified that on the morning after, the children approached her while she was in the bathroom and told her that Johnson had been in their room the night before and had "frightened them." The mother testified that the first time she learned specifically of the alleged abuse was nearly two weeks later when Officer Armstrong called her. Armstrong testified as to what he learned in his interviews with the children, which was substantially the same as what they related at trial. Johnson denied that he had abused the children. The state called Dr. Little to the stand.

Dr. Little testified that when the mother brought the children to him, he asked about the children's histories and physically examined them for signs of abuse, an examination which turned out negative. He said the histories he gained from interviewing the children and their mother helped him form his opinion that the children had been molested. The testimony at issue went as follows:

Prosecutor: What is your opinion?

Dr. Little: My opinion is that generally you do not find signs of abuse.

Prosecutor: Where there's been no penetration?

Dr. Little: That's exactly right.

Prosecutor: Did you make any diagnosis regarding [Child 1]?

Dr. Little: The word "diagnosis" may not be the correct word to use here. It would be more in the form of an opinion. A diagnosis is usually—we usually like to have physical signs in order to make a diagnosis.

Prosecutor: What would your opinion be based upon?

Dr. Little: Well, based upon the histories by the mother, and more so even by the children, I concluded that they had been molested but not in a dramatic way.

Defense Counsel: Object to that foundation, for the opinion. Move to strike.

The Court: It's in. I'll allow it to stand at this point.

On cross-examination, counsel for the defense asked "Dr. Little, as I understand it, you're no expert in the area of child sexual abuse as a doctor, are you?" Dr. Little answered, "That's correct." The jury returned a verdict of guilty on both counts and the court imposed its sentence. Johnson appealed.

## Arguments on Appeal

Johnson's counsel objected to the foundation for Dr. Little's opinion that the children had been molested. The objection was "fleshed out" in Johnson's appellate brief in which counsel specified that the testimony was improperly admitted because the doctor was not qualified as an expert in child sexual abuse as required in I.R.E. 702. On appeal, counsel also asserts that the testimony constituted an impermissible vouching for the credibility of the children and was an opinion on an ultimate issue. The state, on the other hand, asserts that the doctor's opinion was admissible as that of a lay witness because the doctor was not presented as an expert. We find that the doctor's opinion was erroneously admitted and that the error requires reversal.

## Standard of Review

■ Generally, appellate review of trial court rulings on evidence is governed by I.R.E. 103. *State v. Koch,* 115 Idaho 176, 765 P.2d 687 (Ct.App.1989). Error may not be predicated upon a ruling which admits evidence unless a substantial right of the party is affected and a timely objection is made stating the specific ground for the objection if the ground is not apparent from the context. I.R.E. 103; *Koch,* 115 Idaho 176, 765 P.2d 687. "The overruling of an erroneous specific objection will not be overturned because there was a correct ground for exclusion which was not urged at trial." MCCORMICK ON EVIDENCE § 52, at 131 (3rd. ed. 1984). "An untenable specific objection is the same as no objection at all." *Id.;* See *Hobbs v. Union Pacific R.R. Co.,* 62 Idaho 58, 108 P.2d 841 (1940) (objection below of no foundation for expert's opinion held insufficient; error was the failure of the expert to consider sufficient facts to warrant receiving his opinion); *United States v. Ruffin,* 575 F.2d 346 (2d Cir.1978) (objection below of irrele-

vancy did not support claim of hearsay on appeal). Similarly, if the court's admission of evidence is not erroneous on the ground assigned in the objection, there is no basis for claiming error even though the evidence was inadmissible for some other reason. *White v. Larsen & Shafer,* 51 Idaho 187, 3 P.2d 994 (1931). Our Supreme Court has held that an objection which was overruled by the lower court on the ground stated cannot be considered on appeal on a different ground. *State v. Pruett,* 91 Idaho 537, 428 P.2d 43 (1967).

However, plain error affecting substantial rights, although not properly brought to the attention of the trial court, may serve as the basis for review on appeal. I.R.E. 103; *Koch,* 115 Idaho 176, 765 P.2d 687. The term "plain error," when used in a criminal case, embodies the concept of "fundamental error," or error which so profoundly distorts the trial that it produces manifest injustice and deprives the accused of his constitutional right to a fair trial. *Koch,* 115 Idaho 176, 765 P.2d 687. If Dr. Little's testimony affected Johnson's fundamental right to a fair trial and denied him due process of law, we may review the admission of the testimony. *See, e.g., State v. Williams,* 103 Idaho 635, 651 P.2d 569 (Ct.App.1982); *State v. Baker,* 103 Idaho 43, 644 P.2d 365 (Ct.App.1982); *State v. Garcia,* 100 Idaho 108, 594 P.2d 146 (1979); *State v. White,* 97 Idaho 708, 551 P.2d 1344 (1976), *cert. denied, White v. Idaho,* 429 U.S. 842, 97 S.Ct. 118, 50 L.Ed.2d 111 (1978); *State v. Haggard,* 94 Idaho 249, 486 P.2d 260 (1971).

Opinions by Expert and Lay Witnesses

Before discussing the merits of the arguments in this case, we will first discuss the criteria for allowing the introduction of opinion testimony at trial. I.R.E. 702 states that if specialized knowledge will assist the jury to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may offer his opinion. Whether a child has been sexually abused has been held to be a question beyond common experience, and allowing an expert to testify on this issue will assist the trier of fact. *State v. Hester,* 114 Idaho 688, 760 P.2d 27 (1988). The foundation for establishing a witness' qualifications as an expert must be offered before his testimony will be received in evidence. *Hobbs,* 62 Idaho 58, 108 P.2d 841.

On the other hand, I.R.E. 701 allows the court to admit opinion testimony of a non-expert or lay witness when that opinion is rationally based on the witness' perception and is helpful to a clear understanding of his testimony or the determination of a fact in issue. Idaho appellate courts have held that a trial court may, in its discretion, permit a lay witness to state an impression or conclusion about a matter of fact within his knowledge. *State v. Fenley,* 103 Idaho 199, 202, 646 P.2d 441, 444 (Ct.App.1982); *State v. Crook,* 98 Idaho 383, 385, 565 P.2d 576 (1977); *State v. Williams,* 103 Idaho 635, 651 P.2d 569 (Ct. App.1982). It is the underlying factual basis of the witness' testimony which is at issue, not the fact that it is offered as an opinion. *Fenley,* 103 Idaho 199, 646 P.2d 441. However, both expert and lay opinions are subject to the restriction that when the question is one which can be decided by persons of ordinary experience and knowledge, it is for the trier of fact to decide. *Williams,* 103 Idaho 635, 651 P.2d 569. The court or jury must weigh the truth of the facts presented by the witnesses and draw its conclusions by the exercise of independent judgment and reasoning powers, without hearing the opinions of witnesses. *Id.*

Dr. Little was not Qualified to Testify as an Expert Witness

On direct examination, Dr. Little testified that he was a licensed general practitioner employed by Doctor's Immediate Medical Care. He had been a physician for five years and employed by his current employer for three years. The doctor said he that he did not specialize as a physician and had no specific training in the area of child sexual abuse. He stated that he was not a member of any professional organiza-

tion and had not published any articles. He pointed out that he had seen "maybe half a dozen or so" children he thought had been molested. The mother testified that she took her children to Dr. Little simply because he had seen them before, he was familiar to them, and he was available immediately.

Dr. Little's testimony clearly indicates that he was not properly qualified as an expert to speak in that capacity regarding whether the children had been molested. He stated that he had no expertise in the area of child sexual abuse. When the prosecutor asked if he had any specialty or specific area of practice, the doctor stated, "Not at all. Pretty much general practice." Moreover, on cross-examination the doctor denied that he was an expert.

Therefore, defense counsel's objection to the foundation for Dr. Little's testimony was effective insofar as he was presented as an expert. However, the state contends that he was presented as a lay witness, that is, as someone without special skills or knowledge in the area of child sexual abuse. See BLACK'S LAW DICTIONARY p. 888 (6th ed. 1990). Though Dr. Little denied any special knowledge or experience in the field of child sexual abuse, he did possess skill and training in the medical field beyond that of the ordinary juror. In this regard, our concern is whether the jury would not view him as a layman but as someone with elevated skills to whose opinion the jury would defer.

We find several decisions from other jurisdictions helpful in our evaluation of this case. The first case is *Goodson v. State*, 566 So.2d 1142 (Miss.1990), in which a Dr. Chidester was allowed to opine at trial that the rape victim, a juvenile female, "had been sexually traumatized." Dr. Chidester was a general practitioner. She gave no evidence of specialized training in child sexual abuse. Significantly, the state argued on appeal that Dr. Chidester's opinion was admissible as that of a lay witness because the state had not attempted to qualify her as an expert. The Supreme Court of Mississippi, however, was not persuaded. That court stated

No doubt there are occasions when one who by profession possesses expertise may properly offer a lay opinion. Here, Dr. Chidester was proceeding in her professional capacity. The record falls far short of establishing that Dr. Chidester had the professional competence to give the opinion at issue with the level of reliability our law demands of evidence offered at trial.

*Goodson*, 566 So.2d at 1145–1146. The court concluded that the opinion was not admissible because it was based on (1) a single visit between the doctor and the victim; (2) an oral history the doctor elicited from the victim; (3) the physical finding of the absence of a hymenal ring; and (4) the fact that the victim became upset and frightened when the doctor began her pelvic exam. The appellate court held that Dr. Chidester could testify as to behavior engaged in by the victim and observed by the doctor, but that it was error for the trial court to admit the doctor's opinion that the victim had suffered sexual trauma.

In *State v. Bressman*, 236 Kan. 296, 689 P.2d 901 (1984), the Supreme Court of Kansas held that the trial court erred when it permitted an examining doctor to opine that the victim had been raped. The doctor had not been qualified as an expert. Her conclusion was based on "some contacts" with women whom she had seen who claimed they had been raped. However, with respect to the victim in question, there was a lack of physical evidence of rape, and in reaching her conclusion the doctor relied on the story of the incident as it was related by the victim. The Kansas Supreme Court found that no adequate legal foundation had been laid for the doctor's testimony. The court stated that the normal experiences of laymen jurors would permit them to draw proper conclusions from the evidence presented by the state. Moreover, the court found that, in arriving at her conclusion, the doctor necessarily had to pass upon the credibility of the victim. The court stated:

There was a conflict between the testimony of the [victim] and the defendant as to what happened ... It was up to the jury to resolve the conflict. Their deci-

sion could have been affected by the doctor's opinion. *Bressman*, 689 P.2d at 908. The court then declared that the doctor's opinion was not necessary, but was improper and prejudicial to the defendant's right to a fair trial.

We consider the facts in the instant case to parallel those in *Goodson* and *Bressman* and reach the same conclusions found in those cases. Here, Dr. Little should not have been allowed to offer his opinion that the children had been sexually molested. He had little if any experience with child sexual abuse. The only information available to support his opinion was gleaned from one visit with the children in which he found no physical evidence of molestation. He relied solely on the histories provided by the children and the mother that the children had been molested. The basis for the doctor's opinion is limited even more by the fact that the mother, who supplied some of the information the doctor relied on in forming his opinion, could only tell him what the children had told her.

Essentially, Dr. Little's opinion was a judgment on the children's credibility, that is, he believed they were telling the truth. In a jury trial, it is for the jury to determine the credibility of a witness, not another witness. *See State v. Batangan*, 71 Haw. 552, 799 P.2d 48 (1990). *See also United States v. Samara*, 643 F.2d 701 (10th Cir.) *cert. denied*, 454 U.S. 829, 102 S.Ct. 122, 70 L.Ed.2d 104 (1981), *reh. denied*, 454 U.S. 1094, 102 S.Ct. 662, 70 L.Ed.2d 633 (1981); *United States v. Awkard*, 597 F.2d 667, 671 (9th Cir.), *cert. denied*, 444 U.S. 885, 100 S.Ct. 179, 62 L.Ed.2d 116 (1979); *State v. Hoyt*, 806 P.2d 204, 211 (Utah App.1991); *State v. Ross*, 152 Vt. 462, 568 A.2d 335 (1989); *State v. Taylor*, 663 S.W.2d 235 (Mo.1984). Statements by a witness as to whether another witness is telling the truth are prohibited. *See United States v. Azure*, 801 F.2d 336 (8th Cir.1986); *Batangan*, 71 Haw. 552, 799 P.2d 48; *State v. Lindsey*, 149 Ariz. 472, 720 P.2d 73 (1986); *State v. Fitzgerald*, 39 Wash.App. 652, 694 P.2d 1117 (1985); *State v. Keen*, 309 N.C. 158, 305 S.E.2d 535 (1983). We hold that—given the facts in this case and Dr. Little's qualifica-

tions—he did not have the specialized skills to opine that the children had been molested. The chance that the jury was unduly swayed by this opinion was too great to warrant the admission of the testimony. Our conclusion follows a "time-honored principle" of evidence "designed to prevent the fact-finder from exchanging common sense for reliance on the imprimatur of a titled and learned" witness. *Hoyt*, 806 P.2d at 211 (*citing United States v. Bolick*, 917 F.2d 135, 138 (4th Cir.1990)). Such testimony is sometimes capable of bolstering a witness' testimony to the point that it artificially increases its probative strength with the jury. *Id.* (*citing Homan v. United States*, 279 F.2d 767, 772 (8th Cir.), *cert. denied*, 364 U.S. 866, 81 S.Ct. 110, 5 L.Ed.2d 88 (1960). In view of the deference that the jury may have held for the doctor's testimony, we hold that the probative value of his opinion was substantially outweighed by the danger of unfair prejudice and should have been excluded from evidence. *See* I.R.E. 403.

### The Doctor's Opinion Violated I.R.E. 701

Although we have determined that Dr. Little was not qualified to speak as an expert witness, our decision would be incomplete if we did not discuss his opinion as that of a lay witness, as the state argues it was presented. Initially, we conclude that counsel's objection to the doctor's opinion as a lay witness was, by itself, insufficient to preserve the issue for appeal. Counsel objected that no foundation had been laid for Dr. Little's opinion. Reviewing the testimony, it is apparent that the proper objection should have been that the doctor's answer was unresponsive to the question asked. Here, the state asked the doctor what his opinion was based upon, concerning the alleged abuse of the children. Dr. Little responded by actually stating his opinion that the children had been molested. His opinion was irrelevant to the question asked and thus was unresponsive. *See State v. Bair*, 83 Idaho 475, 365 P.2d 216 (1961). However, even though counsel's objection was erroneous, we find that in view of the lack of supporting evidence, the testimony violated Johnson's fundamental right to a fair trial and

is reviewable under the fundamental error provision of I.R.E. 103(d).

In this case, Dr. Little's opinion was based on the histories provided by the children and the mother. The opinion was not based upon his own perception but instead was based on what others had related to him, violating the first requirement of I.R.E. 701. Further, we are not persuaded that his opinion was necessarily helpful to the jury's understanding of his testimony or a fact in issue. The jury was presented with the children's testimony that they had been abused. To the contrary, Johnson denied the allegation. The mother and Officer Armstrong essentially testified to what the children told them. There was no physical evidence of abuse. The case rested on the jury's weighing of the children's testimony against Johnson's. In view of these circumstances, we conclude that the doctor's testimony vouched for the credibility of the children without a sufficiently reliable factual basis to do so, thereby impinging on Johnson's right to a fair trial.

Although decisions involving sexual crimes and the opinions of lay witnesses are sparse, we find support for our conclusion in *State v. Bowman*, 84 N.C.App. 238, 352 S.E.2d 437 (1987). That case involved a prosecution for indecent liberties with a minor, in which a police officer testifying as a lay witness stated at trial that the eight-year-old victim could not fantasize about sex. On appeal, the court held the testimony was wrongly admitted because it essentially stated that the child was telling the truth regarding the fact that she was molested. The court found that, to give such an opinion, the officer had to be an expert. No foundation had been laid regarding the officer's qualifications. In *Bowman*, there was no physical evidence of rape. Only the defendant and the victim purported to personally know of the incident. The testimony of each directly conflicted with the testimony of the other. The state's case against the defendant was

almost totally dependent on the credibility of the victim. Due to these circumstances, the court concluded that the officer's testimony about the child's ability to fantasize demonstrated a reasonable possibility that a different result would have been reached at trial had the error not been committed, thus the error required reversal.[1] We reach the same conclusion in the present case.

### Dr. Little's Opinion Embraced an Ultimate Issue

■ Next, Johnson argues that Dr. Little's opinion should have been stricken because it embraced an ultimate issue. The state argues that because the doctor only gave his opinion that the children had been molested and not that Johnson was the molester, the doctor's opinion did not embrace an ultimate issue. We disagree.

Opinion testimony regarding an ultimate issue is allowed if it will assist the trier of fact. I.R.E. 704. In *State v. Hester*, 114 Idaho 688, 760 P.2d 27 (1988), our Supreme Court relied on a Nevada Supreme Court decision in which an expert was permitted to testify that the child-victim suffered from post-traumatic stress disorder as a result of sexual abuse. The Nevada Supreme Court stated that "it was proper for the State's expert to express an opinion on the issue of whether the child had ... been sexually assaulted or abused. Such an opinion, although embracing an ultimate issue, represents the peculiar expertise and consummate purpose of an expert's analysis." *Hester*, 114 Idaho at 693, 760 P.2d at 32 (*quoting Townsend v. State*, 103 Nev. 113, 734 P.2d 705, 708 (1987). In view of this language, we determine that Dr. Little's opinion that the children had been molested embraced an ultimate issue. Although I.R.E. 704 allows such testimony if it will assist the trier of fact, we find that the testimony in this case would not assist the jury because Dr. Little was not qualified as an expert in the area of child sexual

---

1. *Compare Farley v. People*, 746 P.2d 956 (Colo. 1987), in which a rape counselor who was presented as a lay witness was allowed to opine that based upon her prior experience with rape victims, the victim's reactions were consistent with having been raped. The court allowed the

testimony because it was based on the witness' sensory impressions combined with her experience and prior knowledge, and was not a conclusion based solely on the information provided by the victim.

abuse. The testimony presented a danger of unfair prejudice contrary to I.R.E. 403. Therefore, the trial court erred in admitting the testimony.

### The Error was not Harmless

Finally, we hold that the court's error in admitting Dr. Little's opinion was not harmless in that, after reviewing the record, we are left with a reasonable doubt as to whether the jury would have reached the same result had the opinion not been allowed into evidence. *See State v. Hall*, 111 Idaho 827, 727 P.2d 1255 (Ct.App.1986). *See, e.g., State v. Alger*, 115 Idaho 42, 764 P.2d 119 (Ct.App.1988); *State v. Bussard*, 114 Idaho 781, 760 P.2d 1197 (Ct.App.1988). The credibility of the state's witnesses was a primary issue in the case, and the admission of the doctor's opinion, which tended to vouch for the credibility of the children, may have improperly influenced the jury's verdict of guilt.

Consequently, we reverse the judgment of conviction and remand the cause for a new trial.

SWANSTROM and SILAK, JJ., concur.