911 P.2d 761

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Paul Joseph PUGSLEY, Defendant–Appellant.**

No. 21326.

Court of Appeals of Idaho.

Dec. 5, 1995.

Rehearing Denied Jan. 17, 1996.

Petition for Review Denied March 7, 1996.

172

James Annest, Burley, for appellant.

Alan G. Lance, Attorney General; John C. McKinney, Deputy Attorney General (argued), Boise, for respondent.

PERRY, Judge.

Paul Joseph Pugsley was charged with three counts of lewd conduct, I.C. § 18–1508, and one count of rape, I.C. § 18–6101. During the initial trial on these charges, the district court declared a mistrial because Pugsley had not received a potentially exculpatory videotape from the prosecution. Later, the district court granted Pugsley's motion to have the trial on the rape charge severed from the trial on the lewd conduct charges. The district court denied, however, Pugsley's motion to dismiss the charges on double jeopardy grounds. In the two separate jury trials that followed, Pugsley was found guilty of the three counts of lewd conduct and the one count of rape. The district court sentenced Pugsley to three concurrent, determinate life terms for lewd conduct and a unified twenty-year term, with a ten-year minimum period of confinement, for rape. Pugsley now appeals his judgments of conviction and sentences.

## I.

### FACTS AND PROCEDURE

In August of 1993, J.P., age twelve, disclosed to her mother that she had been sexually abused by her father, Paul Joseph Pugsley. J.P. reported being forced to have sexual intercourse with her father three times between May and August of that year. V.P., J.P.'s eleven-year-old sister, was present during the second incident. J.P. and V.P. stated that their father threatened to kill them if they reported the abuse. As a result of these disclosures; Pugsley was charged with three counts of lewd conduct with a minor.

Pugsley was also charged with one count of rape for an unrelated incident which occurred four years earlier. In May of 1989 Pugsley was living in his mother's home, as was his sixteen-year-old half sister R.R. R.R. reported that she awoke in the night and found Pugsley standing naked near her bed. R.R. said she tried to scream, but Pugsley choked her. According to R.R., Pugsley then raped her and threatened to kill her if she told anyone of the incident.

The four charges against Pugsley were consolidated for trial. Prior to jury selection, Pugsley's counsel made a written motion for relief from prejudicial joinder, claiming that severance of the rape charge from the lewd conduct charges was necessary to prevent prejudice to his defense. After oral argument, the district court issued an order denying Pugsley's motion. During the trial, an employee of the Department of Health and Welfare referred to a videotaped interview of J.P. and V.P. The videotape was discovered in the possession of one of the investigating police officers. Pugsley's counsel moved the district court to declare a mistrial in light of the fact that the videotape, which was arguably exculpatory, had not been provided to the defense. The district court granted the motion for mistrial.

The district court reset the case for trial. A different district judge was assigned to preside over the remaining proceedings. After the jury panel was informed of the nature of the four charges against Pugsley, Pugsley's counsel orally moved the district court to reconsider his previous motion for severance of the rape trial from the trial on the lewd conduct charges. The district court granted Pugsley's motion and ordered that the rape charge be tried separately. Pugsley's counsel further moved the district court to dismiss the charges and argued that subsequent trials would violate Pugsley's right

to be free from double jeopardy. The district court found Pugsley had waived his double jeopardy rights by moving for a mistrial in the initial proceeding and denied the motion.

The second jury was then selected from this panel and sworn to hear the lewd conduct allegations. The jury found Pugsley guilty of all three charges. Eventually, a third jury was selected from a different panel, heard evidence on the rape charge against Pugsley and found him guilty. The district court sentenced Pugsley on the rape charge to a unified term of twenty years, with a ten-year minimum period of confinement. The district court ordered three concurrent, determinate life sentences for lewd conduct to follow the term imposed for the rape conviction.

Pugsley now appeals claiming that his constitutional rights were violated when he was twice tried for the same offenses. He further argues that his counsel was ineffective. Pugsley contends that the district court committed reversible error during his rape trial when it admitted evidence of prior uncharged bad acts. Finally he asserts that his prison terms constitute cruel and unusual punishment and are unreasonable.

## II.

## ANALYSIS

### A. The District Court Did Not Err in Denying Pugsley's Motion to Dismiss on Double Jeopardy Grounds

■ Pugsley claims that the district court subjected him to jeopardy twice for the same offenses, thereby violating his constitutional rights. The district court found that Pugsley had waived his double jeopardy rights by moving for a mistrial. When reviewing a lower court's determination regarding the waiver of a constitutional right, we accept the district court's findings of fact if supported by substantial evidence; however, we freely review the court's application of constitutional requirements to the facts found. *State v. Hoffman,* 116 Idaho 689, 691, 778 P.2d 811, 813 (Ct.App.1989). *See also State v. Fairchild,* 121 Idaho 960, 964, 829 P.2d 550, 554 (Ct.App.1992).

■ Article 1, Section 13 of the Idaho Constitution provides "no person shall be twice put in jeopardy for the same offense." The Fifth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, provides "nor shall any person be subject for the same offense to be twice put in jeopardy of life and limb." Jeopardy attaches when a jury is sworn. *State v. Sharp,* 104 Idaho 691, 693, 662 P.2d 1135, 1137 (1983).

■ A defendant in a criminal case may waive the double jeopardy bar to retrial in certain circumstances. The general rule is that a defendant's motion for mistrial removes any bar by the double jeopardy clause of the Fifth and Fourteenth Amendments to retrial. An exception to the general rule exists, however. A defendant who moves for a mistrial may raise a bar to retrial if the motion was induced by prosecutorial or judicial conduct designed specifically to provoke the defendant into calling for a mistrial. *Fairchild,* 121 Idaho at 963, 829 P.2d at 553; *Sharp,* 104 Idaho at 693, 662 P.2d at 1137.

■ Pugsley moved for a mistrial because he had not received a copy of a potentially exculpatory, videotaped interview of the victim and her sister. By so moving, he waived his right to be prosecuted only once for the same act. However, if the prosecution took actions intended to goad Pugsley into moving for a mistrial, the double jeopardy bar to retrial would be reinstated.

■ A member of the sheriff's office misplaced the videotape and provided it to neither the prosecution nor the defense. The district court concluded that the sheriff's office, not the prosecutor, was at fault for the missing videotape. Pugsley argues that the police are a part of the prosecutor's "team" and, as such, their actions may lead to a reinstatement of the double jeopardy bar to retrial. Assuming *arguendo,* that the actions of the police are attributable to the prosecution for double jeopardy analysis, there is still no evidence in this case of the requisite intent. The district court noted that the nondisclosure of the evidence hurt the state and defense equally. The record supports

the district court's finding that the videotape was inadvertently misplaced. Negligence, even if gross, is insufficient to constitute intent to provoke a mistrial. *United States v. Huang*, 960 F.2d 1128, 1133 (2d Cir.1992). *See also Sharp*, 104 Idaho at 693, 662 P.2d at 1137. When he moved for a mistrial, Pugsley waived his right not to be subjected to jeopardy twice for the same offense. The actions leading to Pugsley's motion were not intended to provoke a mistrial, and therefore there was no bar to retrial. Thus, the district court did not err in denying Pugsley's motion to dismiss.

## B. Pugsley Has Not Established That His Counsel Was Ineffective at the Lewd Conduct Trial

■ Although it is well established that ineffective assistance of counsel claims are preferably brought through an application for post-conviction relief, Pugsley claims it is clear from the record that trial counsel was ineffective, and therefore the claim is properly raised on direct appeal. *See State v. Allen*, 123 Idaho 880, 882, 853 P.2d 625, 627 (Ct.App.1993).

■ To prevail on a claim of ineffective assistance of counsel, the appellant must show that counsel's representation was deficient and that the deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish a deficiency, the applicant has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct.App.1990). In determination of whether deficient performance occurred, there is a strong presumption that the performance by counsel was within the wide range of professional assistance. *Aragon*, 114 Idaho at 760, 760 P.2d at 1176. In order to establish that the deficiency prejudiced the case, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Roles*, 122 Idaho 138, 145, 832 P.2d 311, 318 (Ct. App.1992) *quoting Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

### 1. Double jeopardy claim

■ Pugsley alleges that his trial counsel asserted the constitutional bar of double jeopardy in a "dilatory fashion." As noted above, Pugsley waived his right to claim protection under the double jeopardy clauses of the United States and Idaho Constitutions by moving for a mistrial. The prosecution and police did not purposefully induce the mistrial and therefore did not implicate the protections of the double jeopardy clauses. If the motion lacked merit and would have been denied, counsel ordinarily would not be deficient for failing to pursue it, and concomitantly, Pugsley could not have been prejudiced by the want of pursuit. *Huck v. State*, 124 Idaho 155, 158, 857 P.2d 634, 637 (Ct.App.1993). The same reasoning applies when a defendant finds fault with the time or manner in which counsel presents a motion. Regardless of when in the proceedings Pugsley's counsel made the motion to dismiss, it would properly have been denied. Hence, Pugsley has not shown that his counsel's failure to raise the double jeopardy bar to retrial at an earlier stage in the case was deficient or that Pugsley was somehow prejudiced.

### 2. Motion to sever the trials

Pugsley's trial counsel did not renew his motion to sever the rape charge from the lewd conduct charges until after the second jury panel was informed of all four charges. Pugsley claims that his counsel's performance was ineffective because of this delay in bringing the motion.

The district court included a curative instruction in its preliminary instructions to the jury. The district court advised the jury that:

[T]he court previously stated to you that this case was to involve four separate counts, three involving allegations of lewd and lascivious conduct and one of rape. Based solely upon legal matters, the court has determined that the counts should be severed for trial. Therefore, this trial will only involve the three counts of lewd and

lascivious conduct charges. The rape count will be held in a separate trial later. You are therefore instructed to disregard all earlier comments about the rape allegation.

 Pugsley claims that the curative effect of the instruction could not remove from the minds of the jurors the prejudicial effect of knowing that he was charged with the rape of his half sister. However, it is presumed that the jury follows a limiting instruction. *State v. Boothe*, 103 Idaho 187, 646 P.2d 429 (Ct.App.1982). Pugsley offers nothing more than bare assertions to overcome this presumption. Presuming that the jury complied with the curative instruction in this case, the discussion of the rape charge prior to severance was not considered by the jury. We find no error in this regard.

### 3. Admission of Dr. Adrian's testimony

 Pugsley claims his right to effective assistance of counsel was violated when trial counsel failed to object to the testimony of a pediatrician, Dr. Adrian, who said that in his opinion J.P. had been sexually abused. During the lewd conduct trial, Dr. Adrian testified that he had examined J.P. and found that there was no physical evidence of sexual abuse. Nonetheless, he stated his opinion that such abuse had occurred. We must first determine if Pugsley's counsel was deficient at trial for failing to object to this testimony offered by Dr. Adrian. When an objection would not have been successful its absence will not constitute ineffective assistance of counsel. *State v. Fee*, 124 Idaho 170, 176, 857 P.2d 649, 655 (Ct.App.1993). If the testimony was inadmissible and the objection would therefore have been properly sustained, then counsel's failure to object may have been deficient performance. If so, we must then analyze whether this deficiency prejudiced Pugsley's defense.

 In *State v. Hester*, 114 Idaho 688, 760 P.2d 27 (1988), the Idaho Supreme Court was asked to decide if the trial court erred in admitting expert testimony including the witness' statement that "the objective of the interview was to determine if [the child] had been sexually abused. And in my opinion, he had been." The Supreme Court held:

Under I.R.E. 702 an expert can render an opinion that a child has been sexually abused if he is qualified by knowledge, skill, experience, training, or education. . . . once a proper foundation had been laid, it was not error for these experts to render their opinions that [the child] had been abused. Whether a child has been sexually abused is "beyond common experience" and allowing an expert to testify on this issue will "assist" the trier of fact. *Stoddard v. Nelson*, 99 Idaho 293, 581 P.2d 339 (1978).

*Id.*, at 692–93, 760 P.2d at 31–32 (footnote omitted). The Supreme Court then noted, however, that an expert's opinion in a proper case, is admissible up to the point where an expression of opinion would require the expert to pass upon the credibility of witnesses or the weight of disputed evidence. To venture beyond that point, the Court stated, is to usurp the jury's function. *Id.* at 696, 760 P.2d at 35.

 Such usurpation of the jury's role was found by this Court in *State v. Johnson*, 119 Idaho 852, 810 P.2d 1138 (Ct.App.1991). In *Johnson* a pediatrician, with no special training in child abuse, interviewed the children and their mother, and examined the children for signs of abuse, but found none. The pediatrician testified that "based upon the histories by the mother and more so even by the children, I concluded that they had been molested." This Court determined that the pediatrician did not qualify as an expert on child abuse. This Court also noted that both expert and lay opinions are subject to the restriction that when the question is one which can be decided by persons of ordinary experience and knowledge, it is for the trier of fact to decide. *Id.*, at 855, 810 P.2d at 1141. The opinion of the pediatrician was not based on any unique knowledge of sexual abuse or training in how to deal with victims thereof. Further, this Court found that the pediatrician's "opinion was a judgment on the children's credibility, that is, he believed they were telling the truth. In a jury trial, it is for the jury to determine the credibility of a witness, not another witness." *Id* at 857, 810 P.2d at 1143. In *Johnson*, this Court found that admission of the testimony was error by

the trial court and that it was of such magnitude that the defendant was entitled to a reversal of the judgment of conviction.

In this case, much like *Johnson,* a pediatrician examined the alleged victim. The results of the physical examination were normal. Based on the medical history taken prior to the physical examination the doctor concluded that the alleged abuse had occurred. However, the pediatrician in this case, Dr. Adrian, had received special training in child abuse and a foundation was laid at trial regarding his expertise.

In *State v. Allen,* 123 Idaho 880, 853 P.2d 625 (Ct.App.1993), this Court noted that an expert's opinion regarding sexual abuse should be based on a diagnosis of sexual abuse achieved by performing tests or interview techniques which are beyond the common experience of average jurors. *Id.,* at 885, 853 P.2d at 630. This Court distinguished the opinion testimony in *Allen* from that in *Hester.* In *Hester,* the expert utilized anatomically correct dolls, teddy bears, pencil and chalk drawings and observation of the child's behavior during the interview to determine that abuse occurred. *Hester,* 114 Idaho at 690, 760 P.2d at 29. The child psychiatrist in *Allen* "simply conducted an hour-long personal interview with [the child] and her mother, during which he evaluated [the child's] credibility (not her symptoms of sexual abuse)." This Court determined that the expert witness in *Allen* failed to employ tests and interview techniques which are beyond the experience of average jurors and which, therefore, provide a proper basis for expert opinion that a child has been abused. *Id.*

The criteria, which the psychiatrist used in *Allen,* was the same by which jurors commonly determine the credibility of witnesses: the logical consistency of the story, body language, emotional congruence with the story, spontaneity of the story and presence of other motives for creating the story. *Allen,* 123 Idaho at 884, 853 P.2d at 629. This Court noted that use of these criteria indicated that the expert was not using specialized knowledge or training and, further, the testimony went beyond the permissible bounds of expert opinion to assess the credibility of the

child. *Id.* Counsel's failure to object in that case was found to constitute ineffective assistance of counsel.

The question now before this Court is whether the criteria and method Dr. Adrian used to arrive at his conclusion that J.P. had been abused are beyond the experience of the common juror or are the same indications of credibility that jurors use as a matter of course. Dr. Adrian testified:

My opinion is that she was molested. Sexually molested.

. . . .

Well, my opinion is based on what I considered a reliable history, and her exam is neutral. It doesn't corroborate the history or rule it out. So it may not be as proof positive perhaps as someone who has obvious genital changes, but I found her history reliable.

. . . .

I know that maybe this doesn't count for anything, but my personal experience with examining quite a few kids, her history was consistent. She had supplied details of the history that children who really haven't experienced sexual abuse probably can't. For instance, the cleaning of the semen off the sheets. There's—it would be hard for someone to make up that or coach someone. That seems to me as a— something that someone who's actually experienced when they come forth with a history like that.

Dr. Adrian did not utilize skills that are unavailable to the average juror in arriving at his opinion that J.P. was abused. Rather, Dr. Adrian based his opinion on the logical consistencies and details of J.P.'s story—the criteria this Court identified in *Allen* as being reserved for the jury. Hence, Dr. Adrian's testimony was inadmissible as presented, and Pugsley's counsel was deficient in failing to object.

The next question before this Court is whether this deficiency prejudiced Pugsley. To illustrate prejudice, a criminal defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Wash-*

*ington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984).

In *Allen,* this Court determined that the attorney's failure to object to the inadmissible expert opinion testimony was not only deficient but also prejudicial. This Court noted:

> In *Johnson,* we also cited the case of *State v. Bowman,* 84 N.C.App. 238, 352 S.E.2d 437 (1987), for the conclusion that where the state's case against the defendant was almost totally dependent on the credibility of the victim, the admission of an expert's improper opinion testimony which bolstered the child-victim's credibility "demonstrated a reasonable possibility that a different result would have been reached at trial had the error not been committed ... [The child] and Allen were the only witnesses who knew what actually happened on the night in question, and there was no physical evidence to support or impeach either of their testimonies. Had [the doctor's] improper testimony been properly excluded, there is reasonable probability that the outcome of the trial would have been different."

*Allen,* 123 Idaho at 885, 853 P.2d at 630.

 This case is distinguishable from *Allen,* in this regard, however. V.P. testified that she was present during the second sexual encounter between her father and sister. V.P. provided corroboration for J.P.'s account of that incident and strengthened J.P.'s credibility as a whole. In light of the evidence presented in this case, including the corroborating testimony of V.P., Pugsley has failed to show that absent his counsel's error, and the resulting admission of Dr. Adrian's opinion testimony, there is a reasonable probability that Pugsley would not have been found guilty. Thus, Pugsley is not entitled to relief based on this error.

## C. The District Court Did Not Err in Admitting Evidence Regarding Uncharged Misconduct at the Rape Trial

Pugsley was charged with raping his half sister R.R. C.W., another of Pugsley's half sisters, testified that Pugsley also raped her. The district court ruled this testimony was admissible pursuant to I.R.E. 404(b). Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Pugsley asserts that admission of C.W.'s testimony that she had been raped by Pugsley in 1982 was error under I.R.E. 404(b) because the prejudicial effect of such evidence outweighed the probative value.

 In determining the admissibility of evidence of prior bad acts, this Court applies a two-prong analysis. First the evidence must be relevant to a material and disputed issue concerning the crime charged. *State v. Moore,* 120 Idaho 743, 745, 819 P.2d 1143, 1145 (1991). Whether evidence is relevant is an issue of law. *State v. Raudebaugh,* 124 Idaho 758, 864 P.2d 596 (1993). Therefore, when considering a trial court's admission of evidence of prior misconduct, we exercise free review of the trial court's relevancy determination. The second step of the analysis is the determination that the probative value of the evidence is not outweighed by unfair prejudice. When reviewing this step under I.R.E. 404(b), we use an abuse of discretion standard. *State v. Atkinson,* 124 Idaho 816, 819, 864 P.2d 654, 657 (Ct.App.1993).

The Idaho Supreme Court held that evidence was properly admitted when found to demonstrate a general plan to exploit and sexually abuse an identifiable group of young female victims. *State v. Phillips,* 123 Idaho 178, 845 P.2d 1211 (1993). In *Phillips,* three women testified that when they were minors, Phillips subjected them to sexual abuse. All three women and the complaining witness were friends of Phillips' daughters. Similarly, in *Moore,* the Idaho Supreme Court found that evidence of prior uncharged sexual misconduct with girls the complaining witness's age was helpful to the jury in illustrating a common plan and establishing the credibility of the young victim. The prior bad acts in

*Moore* occurred eleven and then again three years before the charged acts.

█ In this case Pugsley was accused of raping his sixteen-year-old half sister R.R. He and R.R. were both living at their mother's house at the time of the incident in 1989. Evidence was adduced at trial that he previously sexually assaulted his half sister C.W. when she was fourteen. At the time of C.W.'s rape in 1982, C.W. was staying the night at Pugsley's home to care for his children. C.W. and R.R. both described incidents involving sexual intercourse, under threat or use of violence, in Pugsley's home. The charged and uncharged misconduct involved victims, close in age and of the same relation to Pugsley, who provided similar accounts of the attacks. The appellate courts have found prior uncharged sexual misconduct more remote in time and nature than that in this case admissible as evidence of credibility or a common plan or scheme. The evidence was relevant to a material and disputed fact at issue at trial.

█ The second prong of the prior bad acts analysis is the balancing of the probativeness and prejudicial impact of the evidence. As noted, we review this prong under an abuse of discretion standard. When a trial court's discretionary decision in a criminal case is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the court reached its decision by an exercise of reason. *State v. Hedger,* 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

The district court acknowledged that the proper test for the admission of prior bad acts evidence is the two-prong test from *Moore.* The district court reviewed I.R.E. 403, 404(b), *Moore* and *Phillips* in reaching its decision to admit the evidence. The district court considered the similarity of the occurrences and their proximity in time and found that evidence regarding the 1982 rape was relevant. The district court utilized reason and the proper legal standards in deciding to admit the testimony. The district court did not abuse its discretion in finding that the evidence was not more prejudicial than probative.

### D. Pugsley Has Not Established That His Counsel Was Ineffective at His Trial for Rape

Pugsley claims that he was subjected to ineffective assistance of counsel at his trial on the charge of rape. The district court ruled that C.W.'s testimony regarding the 1982 rape was admissible under I.R.E. 404(b). However, during her account of the 1982 rape, C.W. also alluded to other previous incidents between herself and Pugsley and to Pugsley's lewd conduct with J.P. Pugsley's counsel moved for a mistrial after C.W.'s testimony. During oral argument regarding his motion, counsel explained that he chose not to object during C.W.'s testimony because an objection would only have drawn unnecessary attention to the comments which he felt were inadmissible. He chose, instead, to wait and address the testimony by motion outside the presence of the jury.

█ In order to establish a deficiency in counsel's performance Pugsley must illustrate that his counsel's decision not to object to C.W.'s testimony, and thereby emphasize it, fell outside the wide range of professional assistance. *Aragon v. State,* 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988). In a similar situation, this Court explained:

> Trial counsel ... may well have made the tactical decision not to object and move to strike, so as not to draw further attention to the passing reference. We will not second-guess trial counsel's decision not to object and move to strike this testimony.

*State v. Roles,* 122 Idaho 138, 147, 832 P.2d 311, 320 (Ct.App.1992). There is sufficient evidence in the record to show that Pugsley's trial counsel chose not to object for tactical reasons. Pugsley has failed to demonstrate deficiency of his counsel's performance.

### E. Pugsley's Sentence Does Not Constitute Cruel and Unusual Punishment and Is Not Unreasonable

#### 1. Cruel and unusual punishment claim

█ Pugsley contends that the district court imposed a sentence which constitutes

cruel and unusual punishment. The Idaho Supreme Court, in *State v. Brown,* 121 Idaho 385, 825 P.2d 482 (1992), recognized the proportionality test under the Eighth Amendment, as dictated by *Solem v. Helm,* 463 U.S. 277 (1983), and modified by *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). Hence it is the modified test as stated in *Brown* that is the current legal standard for review of a claim of cruel and unusual punishment in Idaho. The Idaho Supreme Court held that except in death penalty cases, before assessing the proportionality of a sentence under the Eighth Amendment, the reviewing court must first "make a threshold comparison of the crime committed and the sentence imposed to determine whether the sentence leads to an inference of gross disproportionality." *State v. Matteson,* 123 Idaho 622, 626, 851 P.2d 336, 340 (1993), *quoting Brown,* 121 Idaho at 394, 825 P.2d at 491.

> We limit our proportionality analysis to death penalty cases and, under the Idaho Constitution ... to those cases which are "out of proportion to the gravity of the offense committed" in the cruel and unusual punishment setting similar to the "grossly disproportionate" analysis of the eighth amendment urged Justices Kennedy, O'Connor, and Souter in *Harmelin.*

*Brown,* 121 Idaho at 394, 825 P.2d at 491.

 Thus, the first step in the case before us is to determine if a life sentence is out of proportion to gravity of the crime— lewd conduct with a twelve-year-old biological daughter of the offender. If this Court finds that the sentence is out of proportion with the offense, the comparison with sentences from this and other jurisdictions is appropriate.

Upon review of the entire record presented, we conclude that the sentences imposed under the facts of this case are not grossly disproportionate to the crimes committed. Hence, comparing Pugsley's sentence to that of offenders in other jurisdictions is unnecessary.

## 2. Excessiveness of the sentence

 An appellate review of a sentence is based on an abuse of discretion standard. *State v. Wolfe,* 99 Idaho 382, 582 P.2d 728 (1978). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of if it is shown to be unreasonable upon the facts of the case. *State v. Nice,* 103 Idaho 89, 645 P.2d 323 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App.1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence we conduct an independent review of the record, having regard for the nature of the offense the character of the offender and the protection of public interest. *State v. Reinke,* 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982).

 Pugsley claims on appeal that his sentences of life terms for lewd conduct and a twenty-year indeterminate term, with a ten-year minimum period of confinement, for rape are unreasonable. He was convicted of three counts of lewd conduct with his daughter consisting of, at a minimum, genital-to-genital contact.[1] On one occasion, he forced himself on his daughter while her younger sister was in the room. Pugsley threatened to kill his daughters if they told of the abuse. Pugsley was also convicted of raping his half sister. Evidence adduced during the two trials indicates that Pugsley raped another of his half sisters and that he reenforced his threats against his youngest daughter and a half sister by killing animals in front of them.

Pugsley's first encounter with the law was in 1972 when he was thirteen years old. Pugsley committed three offenses as a juvenile which, if committed by an adult, would have been felonies. Prior to the charges in

---

1. It is unclear whether vaginal penetration occurred. If so, it was slight penetration that did

not cause physical changes discernable when Dr. Adrian examined J.P.

the cases involved here, Pugsley also committed three other felonies as an adult. He has been placed in a juvenile detention center, placed on retained jurisdiction, placed on probation several times, and has also been incarcerated. As noted by the district court during sentencing:

> The interesting part to this court, when one looks at the presentence report and looks at the prior conduct, is that the first three felonies as a—which would be felonies if committed by an adult, but charged as a juvenile, are crimes against property.
>
> The last three convicted as an adult are all crimes of violence against people, and then of course the four convicted in this case are violent crimes against people. And so the point being that to this court, the defendant's conduct and the nature of the crimes being committed is escalating and getting stronger and more violent.

It is clear from the record that the district court appropriately considered the nature of the offenses and the character of the offender. The district court found that Pugsley was not a viable candidate for rehabilitation. The district court determined that there was an undue risk that Pugsley would commit another crime if not incarcerated. The district court concluded that the sentences imposed were necessary to achieve the sentencing goal of the protection of society.

The issue before this Court is not whether the sentences are ones that we would have imposed, but whether the sentences are plainly excessive under any reasonable view of the facts. *Toohill,* 103 Idaho at 568, 650 P.2d at 710. If reasonable minds might differ as to whether a sentence is excessive, we are not free to substitute our view for that of the district court. *Id.* Having reviewed the record in this case, we cannot say that the district court abused its discretion. Therefore, the judgments of convictions and sentences are affirmed.

### III.

### CONCLUSION

Because he moved for the mistrial, Pugsley waived his right not to be subjected to jeopardy twice for the same offense. The prosecution and police had no intention to provoke a mistrial. Therefore there was no constitutional bar to the retrial. Regardless of the timing of the double jeopardy motion, it would properly have been denied. Therefore, Pugsley's counsel was not ineffective in asserting Pugsley's double jeopardy rights. Because we presume that the jury complied with the curative instruction in this case, the discussion of the rape charge prior to the motion to sever the trials did not prejudice Pugsley. In light of all of the evidence, including the corroborating testimony of V.P., Pugsley has failed to show a reasonable probability that absent his counsel's error and the resulting admission of Dr. Adrian's testimony, Pugsley would not have been found guilty. Hence, Pugsley has failed to demonstrate prejudice arising from his counsel's failure to object to the inadmissible opinion evidence offered by Dr. Adrian. The district court did not err in admitting C.W.'s testimony that she had previously been raped by Pugsley. There is sufficient evidence in the record to show that Pugsley's trial counsel chose not to object during C.W.'s testimony for tactical reasons. Pugsley's sentences are not grossly disproportionate to the crimes committed, nor are they unreasonable.

Therefore, the judgments of conviction and sentences of twenty years, with a ten-year minimum period of confinement, for rape, and three concurrent, determinate life sentences for lewd conduct are affirmed.

WALTERS, C.J., and LANSING, J., concur.