# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 41252

U.S. BANK NATIONAL ASSOCIATION N.D., )
)
Plaintiff-Appellant-Cross Respondent, )
) Boise, June 2014 Term
v. )
) 2014 Opinion No. 110
CITIMORTGAGE, INC., a savings bank )
organized and existing under the laws of New ) Filed: October 29, 2014
York, )
) Stephen Kenyon, Clerk
Defendant-Respondent-Cross )
Appellant, )
)
and )
)
HERBERT G. THOMAS; JULIE A. )
THOMAS; and DOES I-XX, )
)
Defendants. )

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Blaine County. Hon. Robert J. Elgee, District Judge.

The judgment of the district court is <u>vacated</u> and the case is <u>remanded</u> for further proceedings consistent with this opinion.

Davison, Copple, Copple & Copple, Boise, for appellant. Michael E. Band argued.

Pickens Law, P.A., Boise, for respondent. Terri R. Pickens argued.

_____

HORTON, Justice.

This appeal arises from a lien priority dispute between U.S. Bank National Association (U.S. Bank) and CitiMortgage, Inc. (CitiMortgage) who each hold a deed of trust to real property owned by Herbert and Julie Thomas. The district court concluded that U.S. Bank lost its first priority position on the Thomas property after finding that CitiMortgage delivered a demand for reconveyance and U.S. Bank failed to release its deed of trust as required by Idaho Code section

1

45-1514. U.S. Bank appeals, contending that the district court misallocated the burden of proof, that testimony offered by CitiMortgage was inadmissible, and that CitiMortgage failed to prove delivery of the demand for reconveyance. CitiMortgage cross-appeals from the district court's decision that CitiMortgage was not entitled to attorney fees and costs. We vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 30, 2005, the Thomases opened a $2,000,000.00 home equity line of credit (the HELOC) with U.S. Bank. To secure the obligation, the Thomases executed a deed of trust in favor of U.S. Bank (the U.S. Bank Deed of Trust) to real property located at 104 Grey Eagle Road in Sun Valley (the Thomas Property). The U.S. Bank Deed of Trust was recorded in Blaine County on September 9, 2005. Under the terms of the HELOC, the debt secured by the Thomas Property was a revolving line of credit, thus, even if the debt was reduced to a zero balance, the U.S. Bank Deed of Trust would "remain in effect until released."

In November of 2005, the Thomases approached CitiMortgage seeking refinancing. As part of this transaction, CitiMortgage sought a title commitment for the Thomas Property from Blaine County Title Associates (BCT). BCT issued a Commitment for Title Insurance under which Stewart Title Guarantee Company agreed to issue a policy to CitiMortgage so long as all prior deeds of trust, including the U.S. Bank Deed of Trust, were released so that CitiMortgage would be in first lien position with regard to the Thomas Property.

To that end, BCT contacted the local branch of U.S. Bank in Ketchum to determine the HELOC payoff amount. In response, U.S. Bank faxed BCT a screen shot of an account inquiry reflecting the balance owed on the HELOC with an interest calculation as of November 22, 2005. The payoff amount was listed at $1,840,991.52, with interest accruing at a rate of $351.9752619 per day.

On November 23, 2005, the Thomases closed with CitiMortgage and obtained a $4,990,000.00 loan (the CitiMortgage Loan). The CitiMortgage Loan was secured by a deed of trust on the Thomas Property (the CitiMortgage Deed of Trust). The Thomases also signed the loan commitment from BCT, indicating their understanding and intent that the HELOC would be closed and the property reconveyed. The CitiMortgage Deed of Trust was recorded in Blaine County on November 29, 2005.

2

Also on November 29, 2005, a check from BCT in the amount of $1,843,807.40 was hand delivered to the U.S. Bank branch in Ketchum. The check was made payable to U.S. Bank. Immediately below the payee line, was the notation:

Loan No. 00003000398652
Payoff Loan

The loan number referenced was that of the HELOC. The amount of the check represented BCT's calculation of the amount owed on the HELOC, including accrued interest. BCT's policy was that checks were "always" stapled together with release demand letters prior to delivery. It is undisputed that BCT delivered the check, that the check was deposited by U.S. Bank, and that the HELOC balance was reduced to zero. U.S. Bank deposited the excess funds into another account the Thomases maintained with U.S. Bank.

U.S. Bank contends that BCT did not deliver a written demand for release of the U.S. Bank Deed of Trust along with the check. CitiMortgage maintains that the demand letter was stapled to the check. The demand letter that CitiMortgage claims was delivered is undated, captioned "RELEASE DEMAND LETTER," and states, in pertinent part:

In connection with the above-referenced escrow, please find our check #13219 in the amount of $1,843,807.40. You are authorized to use said funds in connection with your Loan Number 00003000398652 when you are in a position to deliver a Deed of Reconveyance of a Deed of Trust or Release of Mortgage from the above referenced borrower, recorded as Instrument No. 526727.

We demand that the Deed of Reconveyance or Release of Mortgage be delivered to the undersigned within 30 days, as provided by statute.

The Thomases were identified as the borrowers in the Release Demand Letter. It is undisputed that U.S. Bank did not reconvey the U.S. Bank Deed of Trust and did not close the Thomases' HELOC.

It appears that the Thomases were initially unaware that the HELOC remained open. However, once they became aware of it, they took full advantage of their good fortune (or the misfortune of one of the parties to this appeal) and began borrowing against the HELOC in January of 2006. By June of 2011, the Thomases owed U.S. Bank over $2 million for draws on the HELOC. Predictably, the Thomases defaulted on both the HELOC and the CitiMortgage Loan. When preparing to foreclose on its deed of trust in 2011, U.S. Bank discovered the CitiMortgage Deed of Trust and this litigation ensued.

U.S. Bank filed a complaint against the Thomases and CitiMortgage to judicially foreclose on the U.S. Bank Deed of Trust and seeking a declaration that its deed of trust had priority over that of CitiMortgage. CitiMortgage raised the affirmative defense that it had priority due to U.S. Bank's failure to comply with Idaho Code sections 45-915 and 45-1514 by failing to release the U.S. Bank Deed of Trust upon satisfaction of the obligation and receipt of the Release Demand Letter.

In September of 2011, the parties filed cross-motions for summary judgment. The district court granted U.S. Bank's motion for summary judgment in regard to the Thomases' default. The district court concluded, however, that there were specific genuine issues of material fact regarding the priority between the U.S. Bank and CitiMortgage deeds of trust. The district court determined that the main contested issue of fact was whether BCT actually delivered the Release Demand Letter to U.S. Bank. If the letter was delivered, the district court found that U.S. Bank had a duty to release the U.S. Bank Deed of Trust upon satisfaction of the debt. Thus, the district court issued an order limiting the factual issues that remained for trial, including, among others, whether the $1.8 million check to U.S. Bank was stapled to the Release Demand Letter.

CitiMortgage and U.S. Bank each filed second motions for partial summary judgment. The district court issued two additional orders limiting issues for trial. Prior to trial, the district court found that the Thomases intended to pay off and close the U.S. Bank HELOC as part of the CitiMortgage refinance. The district court also considered the manner in which U.S. Bank processed checks. The district court found that original checks are not preserved by U.S. Bank but that U.S. Bank retains digital images of the checks. Under U.S. Bank's check-processing policy, any documents stapled to a check are removed from the check at the receiving branch and ancillary documents, such as a release demand letter, are sent to be imaged in one location and checks are sent to a different location to be scanned. In its final order prior to trial, the district court concluded that it still could not rule on the issue of priority between U.S. Bank and CitiMortgage because there still was a genuine issue of material fact regarding the existence or non-existence of staple holes in the check.

Prior to trial, based upon a stipulation of the parties, the district court entered summary judgment in U.S. Bank's favor against the Thomases in the amount of $2,142,931.39, representing the balance they owed on the HELOC. The Thomases are not a party to this appeal.

4

The matter of priority proceeded to a court trial on July 10, 2012. The district court heard testimony from Keith Powers, U.S. Bank's vice-president of strategy and planning for the transaction processing group, Shannon Pearson, a paralegal for Pickens Law, and Loren Madson, who worked in the default management division of U.S. Bank.

Based on the evidence presented in the motions for summary judgment and at trial, the district court found it more probable than not that the check was stapled to the Release Demand Letter. As a result, the district court concluded that the Release Demand Letter was delivered to U.S. Bank, that this letter was sufficient to demand reconveyance of the U.S. Bank Deed of Trust under Idaho Code sections 45-1514 and 45-915, and that U.S. Bank had breached its duty to reconvey. Thus, the district court held that the CitiMortgage Deed of Trust was senior and superior to U.S. Bank's Deed of Trust and had first priority.

Following trial, CitiMortgage filed a motion seeking costs and attorney fees. CitiMortgage argued it was entitled to attorney fees under Idaho Code sections 45-915 and 45-1514 due to U.S. Bank's refusal to reconvey the U.S. Bank Deed of Trust. CitiMortgage also argued it was entitled to fees and costs under Idaho Code sections 12-121 and 10-1210. The district court ruled that CitiMortgage was not entitled to an award of attorney fees and denied CitiMortgage's request for discretionary costs. The district court entered a judgment to this effect on December 4, 2012.

U.S. Bank appealed and CitiMortgage cross-appealed from the denial of its request for attorney fees and discretionary costs. The district court entered an Amended Judgment and Decree of Foreclosure (Order of Sale) on August 6, 2013. The district court determined that the Thomases were jointly and severally liable for a total judgment of $2,222,458.47 together with interest, attorney fees, and costs. The district court also concluded that the U.S. Bank Deed of Trust was subject to the first position CitiMortgage Deed of Trust and ordered that the Thomas Property be sold at public auction. U.S. Bank timely appealed and CitiMortgage again cross-appealed to this Court.

## II. STANDARD OF REVIEW

Following a bench trial, this Court's review "is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law." *Borah v. McCandless*, 147 Idaho 73, 77, 205 P.3d 1209, 1213 (2009). "[T]his Court will liberally construe the trial court's findings of fact in favor of the judgment entered" and "will not

5

set aside a trial court's findings of fact unless the findings are clearly erroneous." *Id.* However, this Court exercises free review over matters of law and is not "bound by the legal conclusions of the trial court, but may draw its own conclusions from the facts presented." *Credit Suisse AG v. Teufel Nursery, Inc.*, 156 Idaho 189, 194, 321 P.3d 739, 744 (2014) (quoting *City of Meridian v. Petra Inc.*, 154 Idaho 425, 434–35, 299 P.3d 232, 241–42 (2013)).

This Court reviews a trial court's decision regarding the admission of evidence for an abuse of discretion. *Hudelson v. Delta Int'l Mach. Corp.*, 142 Idaho 244, 249, 127 P.3d 147, 152 (2005). When reviewing a trial court's decision for an abuse of discretion, this Court considers: "(1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason." *Akers v. D.L. White Const., Inc.*, 156 Idaho 37, 45, 320 P.3d 428, 436 (2014) (quoting *Goodspeed v. Shippen*, 154 Idaho 866, 869, 303 P.3d 225, 228 (2013)).

### III. ANALYSIS

#### A. The district court misallocated the burden of proof.

U.S. Bank argues that the district court did not properly allocate the burden of proof. U.S. Bank asserts that the district court placed the burden of proving non-delivery of the Release Demand Letter upon U.S. Bank when the burden of proof should have been placed on CitiMortgage to prove its delivery. U.S. Bank argues that CitiMortgage bore the burden of proof because delivery of the Release Demand Letter was CitiMortgage's affirmative defense.

In general, the party seeking foreclosure has the burden of establishing the existence of the debt and default on that debt. *See* I.C. § 45-1505. The burden of proving an affirmative defense, however, rests upon the party who advances the affirmative defense. *Harman v. Nw. Mut. Life Ins. Co.*, 91 Idaho 719, 721, 429 P.2d 849, 851 (1967). When determining priority, "[g]enerally, the party demanding the subordination of a lien that is apparently superior to its own assumes the burden of proving the facts adduced to support relief." 59 C.J.S. Mortgages § 333.

Here, the parties do not dispute the existence of the U.S. Bank Deed of Trust, nor the Thomases' default on the obligation secured by the U.S. Bank Deed of Trust. At issue is the priority of the deed of trusts held by CitiMortgage and U.S. Bank. "According to Idaho's recording statutes, a mortgage recorded first in time has priority against all other subsequent

6

mortgagees." *Estate of Skvorak v. Sec. Union Title Ins. Co.*, 140 Idaho 16, 23, 89 P.3d 856, 863 (2004). This rule applies equally to deeds of trust. *See Kalange v. Rencher*, 136 Idaho 192, 195, 30 P.3d 970, 973 (2001). Here, U.S. Bank recorded its Deed of Trust on September 29, 2005, and this lien was never released. CitiMortgage recorded its Deed of Trust on November 29, 2005. Thus, because U.S. Bank's Deed of Trust was recorded prior to CitiMortgage's Deed of Trust, CitiMortgage was asserting subordination of a lien that was superior to its own. As such, CitiMortgage bore the burden of proving facts sufficient to show that U.S. Bank's Deed of Trust no longer had priority over CitiMortgage's Deed of Trust.

The next issue is whether the district court misapplied the burden of proof. "The question of where a burden of proof lies is a question of law." *Robinson v. State Farm Mut. Auto. Ins. Co.*, 137 Idaho 173, 176, 45 P.3d 829, 832 (2002). This Court has remanded for application of the correct burden of proof when a district court placed the burden of proof on the wrong party and in contradiction of well-established law. *Robinson*, 137 Idaho at 178, 45 P.3d at 834. In *Robinson* this Court found reversible error when the district court misapplied the burden of proof and the plaintiff "was excused from proving an essential element of the bad faith claim . . . ." *Id.*

In its findings of fact and conclusions of law, the district court did not explicitly address which party bore the burden of proof as to whether the Release Demand Letter was delivered to U.S. Bank. Therefore, we have carefully reviewed the district court's findings of fact in order to determine the district court's approach to the burden of proof. We note that the district court consistently referred to U.S Bank's failure to present evidence regarding delivery of the Release Demand Letter. The district court noted that, "U.S. Bank did not present evidence" regarding the visibility of staple holes, and that "no visual evidence of the difference [between staple holes and dust specks] was presented to the Court by U.S. Bank." The district court also stated that U.S. Bank's evidence "fails to explain how checks are physically moved." Proper application of the burden of proof would have directed attention to CitiMortgage's evidence that a demand for reconveyance was delivered rather than focusing on U.S. Bank's failure to present evidence on this issue. We conclude that the district court's findings of fact reflect that it erroneously placed the burden of proof on U.S. Bank.

## B. U.S. Bank has failed to demonstrate that the district court committed reversible error by admitting the testimony of Shannon Pearson.

CitiMortgage presented testimony from Pearson, a paralegal in CitiMortgage's attorney's office. Pearson conducted a "low-tech experiment" by scanning an image of a check using the

office copy machine to determine whether staple holes were visible in the scanned image. U.S. Bank objected to the admissibility of her testimony and the results of her experiment. The district court overruled U.S. Bank's objection, concluding that Pearson was testifying to her own experiment which required no technical or special expertise and concluded that Pearson could testify as a lay witness regarding her opinion regarding the visibility of staple holes. The district court noted that Keith Powers had been permitted to present his lay opinion that staple holes were not visible in the digital images of the BCT check created by U.S. Bank and First Bank of Idaho.[1]

U.S. Bank argues that the district court abused its discretion by admitting Pearson's experiment because the experiment was not conducted under substantially similar conditions to its check-imaging process. U.S. Bank also argues that Pearson improperly testified as a lay witness by offering an opinion based on scientific or other specialized knowledge.

We are inclined to the view that the substantial differences between the manner in which the BCT check was imaged by U.S. Bank[2] and Pearson's "low-tech experiment" are such that evidence of the latter would not be admissible.[3] However, U.S. Bank did not object to the admission of Pearson's testimony based upon the absence of similarity of circumstances. Rather, U.S. Bank argued that Pearson's testimony was inadmissible because she was not an expert in

---

[1] U.S. Bank created a digital image of the BCT check after receiving it. It then used an intermediary for presentment of the check to First Bank of Idaho, the drawee. First Bank of Idaho then caused its own digital image of the check to be created. The original check was then apparently destroyed after the two banks were satisfied with the quality of their digital imagery.

[2] Apart from Powers' testimony that the First Bank of Idaho image appeared to be of a higher resolution quality than that of U.S. Bank, there was no testimony as to the process or circumstances by which it was created.

[3] " '[E]vidence of an extrajudicial experiment will be excluded unless the conditions under which the experiment was conducted are shown to be substantially similar' " to the conditions existing at the time of the event which is the subject of the experiment. *Lopez v. Allen*, 96 Idaho 866, 871, 538 P.2d 1170, 1175 (1975) (quoting *Hansen v. Howard O. Miller Inc.*, 93 Idaho 314, 318, 460 P.2d 739, 743 (1969)). If the conditions of the event at issue and the experiment are substantially similar, minor deviations in the conditions will go to the weight of the evidence, not its admissibility. *Hansen*, 93 Idaho at 318, 460 P.2d at 743. However, when the conditions are so dissimilar that presentation of the evidence may mislead, rather than assist the trier of fact, it should not be admitted. *Lopez*, 96 Idaho at 871, 538 P.2d at 1175.

U.S. Bank initially processed the check by applying magnetic ink in the familiar check encoding font on the lower right hand of the face of the check to reflect the amount of the check (0184380740). The check was then forwarded to the image capturing room, which has a "limited access, humidity-controlled, dust-controlled" environment. Once there, the check was run through an IBM 3890/97 sorter camera, which processes checks at the rate of 2,000 per minute. The check was transported by means of belts and rollers into a "coffin" where both sides were imaged by a high speed camera. The environment inside the coffin was controlled for humidity, dust and light intensity. The camera captured a black and white image with a resolution of 200 dots per square inch (dpsi).

Pearson performed her experiment by stapling a blank check to a piece of paper, removing the staple using a "claw-like staple remover." She fed the check into a scanner feeder on a Sharp photocopier in her employer's law office and scanned the front and back of the check at a resolution of 400 dpsi. She forwarded the digital files to her computer and then printed the image from her computer.

the field of document imaging and because she was employed by counsel. "If a person objecting to the admission of evidence states one ground for objection in the trial court, which is overruled, we will not consider on appeal whether a different objection would have been sustained." *Thomson v. Olsen*, 147 Idaho 99, 105, 205 P.3d 1235, 1241 (2009).

The circumstances under which Pearson performed her experiment were the subject of her own personal knowledge. The only opinion that she expressed related to the results of her experiment. She testified that she was able to discern staple holes on the scanned image of the face of the check but that she was unable to locate staple holes on the scanned image of the rear check. "So long as a lay witness does not testify on the basis of specialized knowledge, [her] opinions or inferences are admissible testimony if they are rationally based on [her] own perceptions and helpful to the trier of fact. I.R.E. 701." *Carrillo v. Boise Tire Co.*, 152 Idaho 741, 750, 274 P.3d 1256, 1265 (2012). The district court clearly viewed lay testimony as to the visibility of staple holes in images as being helpful, as he permitted Powers to offer his lay opinion as to whether staple holes were visible in the images of the BCT check created by U.S. Bank and First Bank of Idaho. Accordingly, we hold that U.S. Bank has not demonstrated reversible error in the admission of Pearson's testimony.[4]

## C. We are unable to determine whether the district court's findings of fact are supported by substantial and competent evidence because the district court failed to evaluate relevant evidence.

Idaho Code section 45-1514 spells out the procedure for causing a deed of trust to be reconveyed upon satisfaction of the underlying obligation. The statute provides:

> Upon performance of the obligation secured by the deed of trust, the trustee upon written request of the beneficiary shall reconvey the estate of real property described in the deed of trust to the grantor; providing that in the event of such performance and the refusal of any beneficiary to so request or the trustee to so reconvey, as above provided, such beneficiary or trustee shall be liable as provided by law in the case of refusal to execute a discharge or satisfaction of a mortgage on real property.

---

[4] Presumably because it would call into question the admissibility of Power's opinion that staple holes were not visible in the two sets of images of the BCT check, U.S. Bank has not identified one potential ground for exclusion of Pearson's testimony that holes were not visible in the image of the back of the check resulting from her experiment. Lay opinion is inadmissible as to questions that can be resolved by "persons of ordinary experience and knowledge." In such circumstances, the question is left to the trier of fact to decide. *State v. Turner*, 136 Idaho 629, 632-33, 38 P.3d 1285, 1288-89 (Ct. App. 2001); *State v. Pugsley*, 128 Idaho 168, 175, 911 P.2d 761, 768 (Ct.App.1995); *State v. Johnson*, 119 Idaho 852, 855, 810 P.2d 1138, 1141 (Ct. App. 1991). Whether an image appears to depict staple holes is likely a matter best left to the trier of fact.

I.C. § 45-1514 (emphasis added).

The district court correctly observed that additional guidance as to the duty to reconvey can be obtained from Idaho Code section 45-915. Idaho Code section 45-915 addresses the reconveyance of mortgages and is identical in purpose to Idaho Code section 45-1514. *See Brinton v. Haight*, 125 Idaho 324, 332, 870 P. 2d 668, 685 (Ct. App. 1994). Thus, Idaho Code sections 45-1514 and 45-915 may be read in *pari materia*. Idaho Code section 45-915 provides:

> When any mortgage, affecting the title to real property, has been satisfied, the holder thereof or his assignee must immediately, on the demand of the mortgagor, purchaser, or the successor in interest of either, execute, acknowledge, and deliver to him a certificate of the discharge thereof so as to entitle it to be recorded . . . .

Reading Idaho Code section 45-1514 in concert with Idaho Code section 45-915, the district court correctly concluded that Idaho Code section 45-1514 places the duty of reconveyance on the trustee once the underlying obligation has been satisfied and upon receipt of a written request for reconveyance of the property. *See Brinton*, 125 Idaho at 330, 870 P. 2d at 683.

The district court found that it was more probable than not that the Release Demand Letter was stapled to the check. U.S. Bank argues that this finding of fact is clearly erroneous.[5] Because it is undisputed that U.S. Bank received the check, the district court found that U.S. Bank also received the Release Demand Letter.

The district court stated that "U.S. Bank did not present evidence of any comparisons, independent testing, or analysis on their imaging equipment to determine the extent to which staple holes are, or are not, visible in processed checks, or what staple holes might look like on processed checks."

The record shows that U.S. Bank did present evidence at the summary judgment stage showing images of checks with the pertinent characteristics. Exhibits C and D attached to Powers' affidavit in support of U.S. Bank's second motion for summary judgment depicted two checks that had been scanned by U.S. Bank and which appear to show the presence of staple

---

[5] U.S. Bank also claims that there was no evidence supporting the district court's finding that U.S. Bank's machinery might have operated such that staple holes would not be visible in the digital images. This claim is without merit. Although the district court erroneously stated that "the evidence fails to explain how checks are physically moved through the 'coffin,'", there was, in fact, evidence introduced supporting the district court's finding that when a check is moved through the U.S. Bank imaging machine staple holes could be filled in. Mr. Powers testified that checks are transported by belts and rollers into the coffin. On cross-examination, he conceded that it was possible that paper displaced by a staple could fold back over and cover the hole when being transported by the belts and rollers.

marks. At the beginning of the court trial, the parties and the district court agreed that the district court would consider "all of those affidavits and documents that have been submitted, along with the affidavits at the motion for summary judgment stage of the case" so that the parties did "not need to reintroduce or reoffer exhibits that are already in the record simply to complete it for trial." Thus, the district court's statement that U.S. Bank failed to offer evidence for purpose of comparing images of a stapled check verses an unstapled check is not correct.

It is an understatement to say that the evidence of delivery of the Release Demand Letter was highly conflicting. CitiMortgage's claim that the demand for reconveyance was delivered rested largely on BCT's practice of "always" stapling such a demand to the payoff check (which included the notation "payoff" of the Thomases' loan and the loan number), an email in which a U.S. Bank officer acknowledged some degree of absence of controls relating to HELOCS, and the results of Pearson's experiment. In turn, U.S. Bank primarily relied on the absence of a record of receiving the demand letter, the inability of any witness to testify that the letter had actually been delivered, and the two sets of digital images which, in Powers' lay opinion, did not show the holes that would have been created by the staples.

The district court's explicit failure to consider the two exemplars of digital images of checks with staple holes, coupled with its misallocation of the burden of proof, lead us to the conclusion that we must remand this matter to the district court for consideration of all the evidence in light of the applicable burden of proof.

**D. If the Release Demand Letter was delivered, U.S. Bank had a duty to reconvey the Thomases' property.**

Although this case must be remanded, we will address a legal issue that is presented by this appeal and which, depending upon whether the district court finds that the Release Demand Letter was delivered, must be answered. U.S. Bank argues that even if the demand was delivered, it was ineffective because it did not comply with Idaho Code section 45-1203. CitiMortgage responds that Idaho Code section 45-1203 does not apply to this case. We agree.

Idaho Code section 45-1203 provides a procedure for unilateral reconveyance of a deed of trust by a title insurer or title agent when a beneficiary fails to fulfill its duty to reconvey a deed of trust. Idaho Code section 45-1203(1) requires that a notice of intent to reconvey the deed of trust be delivered to the beneficiary and that it be accompanied by a copy of the reconveyance to be recorded. U.S. Bank argues that because the letter from BCT was undated and did not contain a copy of the reconveyance to be recorded, the Release Demand Letter from BCT was

11

insufficient. This case does not present the situation governed by the statute. BCT did not attempt to effectuate a unilateral reconveyance. Thus, the statute is inapplicable and the Release Demand Letter was sufficient under Idaho Code section 45-1514 to impose a duty upon U.S. Bank to reconvey the Thomases' property.

**E. We provide guidance as to CitiMortgage's request for attorney fees before the trial court.**

CitiMortgage cross-appeals from the district court's refusal to award it attorney fees. Although this issue may become moot, depending upon whether the district court's finds that the Release Demand Letter was delivered, we address this issue for guidance on remand. CitiMortgage argues that the district court erred by not awarding fees under Idaho Code sections 45-915, 45-1514 and 12-121. CitiMortgage also argues that the district court erred by failing to address its request for costs under Idaho Code section 10-1210. We address each issue in turn.

### 1. Attorney fees under Idaho Code sections 45-915 and 45-1514.

The district court concluded that Idaho Code sections 45-915 and 45-1514 are to be construed *in pari materia* because the grantor of a deed of trust and a mortgagor are generally in the same position. In doing so, the district court determined that CitiMortgage "can claim damages under Idaho Code § 45-915" because CitiMortgage (via BCT) was demanding reconveyance through the Thomases as the grantors. However, the district court declined to award fees because it concluded that CitiMortgage was required to plead and prove attorney fees as an element of damages, which it failed to do.

Idaho Code section 45-1514 states:

> Upon performance of the obligation secured by the deed of trust, the trustee upon written request of the beneficiary shall reconvey the estate of real property described in the deed of trust to the grantor*;* providing that in the event of such performance and the refusal of any beneficiary to so request or the trustee to so reconvey, as above provided, such beneficiary or trustee shall be liable as provided by law in the case of refusal to execute a discharge or satisfaction of a mortgage on real property.

Thus, Idaho Code section 45-1514 indicates that liability for refusal to reconvey a deed of trust is determined under Idaho Code section 45-915. Idaho Code section 45-915 states in pertinent part:

> [A]ny holder, or assignee of such holder, who refuses to execute, acknowledge, and deliver to the mortgagor, purchaser, or the successor in interest of either, the certificate of discharge, or to enter satisfaction, or cause satisfaction of the mortgage to be entered, as provided in this chapter, is liable to the mortgagor,

12

purchaser, or his grantee or heirs, *for all damages which he or they may sustain by reason of such refusal*, and shall also forfeit to him or them the sum of $100.

(emphasis added).

This Court has already determined that under Idaho Code section 45-915 and therefore, under Idaho Code section 45-1514, attorney fees may be awarded as compensatory damages. *See Cornelison v. U.S. Bldg. & Loan Ass'n*, 50 Idaho 1, 8, 292 P. 243, 246 (1930) ("Attorney's fees incurred as the result of necessity of bringing action to compel cancellation of the mortgage are recoverable as damages."); *see also Head v. Crone*, 79 Idaho 544, 547, 324 P.2d 996, 998 (1958) (noting that attorney fees incurred in the release of chattel mortgages are recoverable as damages). As a result, the plaintiff has the burden to both plead these damages and to establish these compensatory damages with reasonable certainty. *See Bratton v. Scott*, 150 Idaho 530, 535–36, 248 P.3d 1265, 1270–71 (2011); *see also Trees v. Kersey*, 138 Idaho 3, 11–12, 56 P.3d 765, 773–74 (2002).

Here, CitiMortgage did not present any evidence at trial regarding attorney fees as damages. Instead, CitiMortgage requested attorney fees under Idaho Code sections 45-915 and 45-1514 pursuant to I.R.C.P. 54(e)(1) as the prevailing party. The district court correctly denied CitiMortgage's request for attorney fees under Idaho Code sections 45-915 and 45-1514.

## 2. Attorney fees under Idaho Code section 12-121.

The district court also concluded that attorney fees were not warranted under Idaho Code section 12-121 because U.S. Bank did not defend[6] the case frivolously, concluding that "U.S. Bank's defense was very well taken under the circumstances." CitiMortgage argues that it was entitled to fees because U.S. Bank pursued this action in bad faith for the singular and vexatious purpose of running up attorney fees.

Pursuant to Idaho Code section 12-121: "In any civil action, the judge may award reasonable attorney's fees to the prevailing party . . . ." An award of fees under Idaho Code section 12-121 may be awarded by the district court in its discretion "when it is left with the abiding belief that the action was pursued, defended, or brought frivolously, unreasonably, or without foundation." *Garner v. Povey*, 151 Idaho 462, 468, 259 P.3d 608, 614 (2011) (quoting *C*

---

[6] In its oral discussion of CitiMortgage's request for attorney fees pursuant to Idaho Code section 12-121, the district court referred to U.S. Bank's "defense" of the action on nine occasions. As U.S. Bank was the plaintiff in this action, this was clearly an erroneous characterization of U.S. Bank's position in the litigation. Nevertheless, this error is of no significance as to CitiMortgage's entitlement to attorney fees. We can only speculate as to whether this error contributed to the district court's misallocation of the burden of proof.

*& G, Inc. v. Rule*, 135 Idaho 763, 769, 25 P.3d 76, 82 (2001)). "A district court's denial of fees under I.C. § 12–121 will not be overturned absent an abuse of discretion." *Id.*

Here, the district court correctly observed that the entire course of litigation needed to be taken into account but that it could, in its discretion, award fees if it found U.S. Bank pursued this action frivolously or unreasonably. This indicates the district court correctly perceived the issue as discretionary. The district court next considered the merits of U.S. Bank's claims, noting that there was, "at a minimum, a fairly debatable issue as to whether the demand letter was ever delivered." Thus, the district court acted consistently with the legal standards applicable to Idaho Code section 12-121, within the boundaries of its discretion, and through the exercise of reason. We conclude that the district court did not abuse its discretion by denying CitiMortgage's request for fees under Idaho Code section 12-121.

### 3. Costs under Idaho Code section 10-1210.

Under Idaho Code section 10-1210, the district court may "make such award of costs as may seem equitable and just" in a proceeding for declaratory judgment. The district court did not explicitly address CitiMortgage's requests for discretionary costs under Idaho Code section 10-1210. On remand, the district court should consider all grounds upon which the prevailing party seeks an award of costs or fees.

### F. Neither party is entitled to attorney fees on appeal.

CitiMortgage requests attorney fees and costs on appeal. Because CitiMortgage did not prevail in this appeal, it is not entitled to an award of attorney fees.

U.S. Bank requests attorney fees in connection with the cross-appeal, arguing that CitiMortgage's cross-appeal was brought unreasonably and without foundation. As CitiMortgage correctly pointed out, the district court failed to address its request for an award of costs pursuant to Idaho Code section 10-1210. Thus, we are unable to conclude that CitiMortgage's cross-appeal was frivolously pursued.

### IV. CONCLUSION

We vacate the judgment of the district court and remand for proceedings consistent with this opinion. We do not award attorney fees or costs on appeal.

Chief Justice BURDICK and Justices EISMANN, J. JONES and W. JONES **CONCUR**.