**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51158**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: October 1, 2025** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) |
| TRAVIS LYLE ALDRIDGE, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Custer County. Hon. Stevan H. Thompson, District Judge.

Judgment of conviction for lewd conduct with a minor under sixteen and being a persistent violator, <u>affirmed</u>.

Greg S. Silvey, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge Pro Tem

Travis Lyle Aldridge appeals from his judgment of conviction for lewd conduct with a minor under sixteen and being a persistent violator. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Aldridge was charged with one count of lewd conduct with a minor under sixteen after he was accused by his girlfriend's fourteen-year-old daughter of genital-to-genital contact. The victim reported that the conduct occurred during an overnight trip to collect firewood in the fall of 2020 when the victim and Aldridge stayed in a travel trailer on the victim's uncle's property. The victim indicated that she woke up to find Aldridge engaging in sexual intercourse with her. A jury found Aldridge guilty of lewd conduct with a minor under sixteen (I.C. § 18-1508) and found him

1

subject to the persistent violator enhancement based on prior felony convictions (I.C. § 19-2514). Aldridge appeals.

## II.

## ANALYSIS

Aldridge raises numerous issues on appeal, arguing that the district court erred by: (1) granting the State's motion to allow I.R.E. 404(b) evidence of uncharged sex crimes; (2) limiting I.R.E. 412 evidence of a prior allegedly false accusation by the victim; (3) granting the State's motion for a witness to testify via Zoom but then denying Aldridge the same; (4) not allowing a lay witness to testify about her own "experiment" with altering text messages; and (5) allowing the information to be amended. Aldridge also argues that the cumulative effect of the alleged errors warrants a new trial. We address each issue in turn.

### A.     Admission of Evidence of Uncharged Acts--I.R.E. 404(b)

Prior to trial, the State filed a motion to admit I.R.E. 404(b) evidence of uncharged sexual misconduct repeatedly committed by Aldridge against the victim over a two-year period before the charged conduct. Aldridge filed a response, arguing that there was insufficient evidence to establish the other acts, that the acts were relevant only to prove propensity, and that admission of the evidence would be unfairly prejudicial. The motion was addressed at a hearing prior to trial, at which the district court deferred making a ruling and indicated it would need to understand the context of how the other bad acts would be introduced and the purpose for introducing them. The district court stated:

> All right. Well, I guess--and again, the [I.R.E.] 404(b) motion, the motions in limine prior to trial starting, sometimes the Court can't give you a definitive ruling other than to indicate that as to testimony of the victim regarding prior allegations of sexual abuse against her specifically as opposed to someone else, but against her specifically by [Aldridge] in this case, that the case law - obviously, the case law is telling me--*State v. Grist*, [147 Idaho 49, 205 P.3d 1185 (2009)], *State v. Truman*, [150 Idaho 714, 249 P.3d 1169 (Ct. App. 2010)], others--that the same [I.R.E.] 404(b) analysis is going to be applied to sex offense cases, as it would to any other cases, and then the [I.R.E.] 403 analysis thereafter.
>
> But it would seem that there are certainly a number of cases where that type of testimony has been allowed specific to the victim and other allegations of other claimed abuse situations with her specifically under [I.R.E.] 404(b) that's being offered for something other than propensity to commit this kind of offense. It is being offered to show whether it's intent or opportunity, lack of--to--of mistake.

2

There's a delayed disclosure issue. Grooming, I guess, comes into play sometimes based upon the expert testimony in the case.

But, [defense counsel], I guess that's an area that the Court is--without making a ruling today, I think that just--I'm telling you this--the case law gives the Court guidance that that type of testimony has certainly been approved by the Supreme Court in other situations.

Now, when we get into allegations against other victims, other, you know, unrelated circumstances, that's a whole different story, I think. But I think it's a-with the victim herself and other allegations, I think it's much more easily admitted. And so you might expect the Court to grant some leeway there and allow testimony in that regard with the proper, I guess, you know, foundation being laid and the Court making that finding that it's not being offered for propensity purposes, it's being offered for an allowed purpose under [I.R.E.] 404(b) and then make my determination at that time under [I.R.E.] 403 if I feel the relevance is outweighed by the prejudice to [Aldridge] in the particular case. So I'll have to go through that analysis. But the case law would seem to be guiding the Court that--in favor of admitting that, you know, absent, you know, some unforeseen circumstances that I'm not aware of today.

So I guess, again, that's the best ruling I can give you today with some guidance of where the Court may be headed with that.

During trial, evidence of Aldridge's other acts of sexual abuse against the victim was admitted through the victim's testimony, a CARES interview video and the testimony of other witnesses. Aldridge did not object to any of this evidence on I.R.E. 404(b) grounds. Therefore, we first address the State's argument that this issue is not preserved for appeal. A party preserves an issue for appeal by properly presenting the issue with argument and authority to the trial court below and noticing it for hearing or a party preserves an issue for appeal if the trial court issues an adverse ruling. *State v. Miramontes*, 170 Idaho 920, 924-25, 517 P.3d 849, 853-54 (2022). Since a motion in limine is based on an alleged set of facts rather than the actual testimony, the trial court's ruling is not a final order. *State v. Radue*, 175 Idaho 297, 304, 564 P.3d 1230, 1237 (2025); *State v. Young*, 133 Idaho 177, 179, 983 P.2d 831, 833 (1999). The trial court may reconsider the issue at any time, including when the actual presentation of facts is made. *Radue*, 175 Idaho at 304, 564 P.3d at 1237. The trial court may, in the exercise of discretion, choose to defer the ruling until the case unfolds and the evidence is offered in context. *Id.*

Preservation of an issue presented in a motion in limine has been addressed by the Idaho Supreme Court. As relevant here, when the district court defers ruling on an evidentiary objection made in a motion in limine, the objection must be made again at trial to be preserved. *State v.*

*Rodriguez*, 132 Idaho 261, 265, 971 P.2d 327, 331 (Ct. App. 1998). Although Aldridge argued in opposition at the pretrial hearing, he did not renew his objection when the I.R.E. 404(b) evidence was offered at trial. Thus, this issue was not preserved for appeal, and we do not address it further.

**B.      Victim's Prior Allegedly False Accusation of Sexual Misconduct--I.R.E. 412**

Prior to trial, Aldridge filed a motion in limine to permit him to introduce evidence that the victim had made false accusations of sexual misconduct against her then-stepfather when she was five or six years old. Aldridge also filed a notice of intent pursuant to I.R.E. 608(b) to offer evidence of perjured testimony related to the same accusations. The district court denied the requests. Aldridge argues the district court abused its discretion by limiting the information that was admitted at trial regarding the victim's prior accusations of sexual misconduct involving her former stepfather. Specifically, Aldridge argues he should have been permitted to call the victim's former stepfather to testify.

Trial courts maintain broad discretion in admitting and excluding evidence. *State v. Weigle*, 165 Idaho 482, 487, 447 P.3d 930, 935 (2019). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

Generally, evidence of a sex-crime victim's past sexual behavior is not admissible in a criminal case. I.R.E. 412(a). However, a victim's prior false accusation of a sex crime may be admissible. I.R.E. 412(b)(3). The Idaho Supreme Court has adopted a three-part test to determine the admissibility of false allegations of sex crimes under I.R.E. 412. *State v. Chambers*, 166 Idaho 837, 845, 465 P.3d 1076, 1084 (2020). The first step of the analysis for evidence of false allegations requires the trial court to determine whether the allegations of the purported victim are false. *Id.* The second part of an I.R.E. 412 analysis requires the trial court to determine whether the evidence is relevant. *Chambers*, 166 Idaho at 846, 465 P.3d at 1085. The third step of the analysis requires the trial court to engage in a balancing test set out in I.R.E. 412(c)(2). *Chambers*, 166 Idaho at 846, 465 P.3d at 1085.

In the first step of the analysis, the trial court must determine whether the allegation is false by a preponderance of the evidence. Before the trial court can admit evidence, it must conduct an in-camera hearing at which the parties may call witnesses, including the alleged victim, and offer relevant evidence. I.R.E. 412(c)(2). The day before trial began and after hearing argument on the purported false accusations of sexual misconduct, the district court indicated to Aldridge that, based on "the status of the record right now," it could not make a determination of the falsity of the allegations. The district court stated that, its "interpretation of the police reports is simply that allegations were made and that charges were not brought. That doesn't necessarily mean they were false." The district court stated that Aldridge was entitled to a hearing and would be given an opportunity to make a record. After the State rested and Aldridge began his case-in-chief, an I.R.E. 412 hearing was held at which the former stepfather testified outside the presence of the jury as follows:

Q:     I'd like to direct your attention to an accusation that was made against you by [the victim] in February 2014. Do you remember that?
A:     Not particularly.
Q:     Okay. So you don't remember being accused of touching her?
A:     No, no. . . .
. . . .
Q:     Okay. So you don't have any knowledge of [the victim] accusing you of touching her inappropriately?
A:     No. Not before that point.
Q:     Okay. What about after that point?
A:     Talked with [an officer] for several minutes, and he told me that it wasn't over and he'd be back in touch with me and nothing ever became of it.

The former stepfather further testified that he realized something had triggered law enforcement's involvement and acknowledged that the victim had found some pornographic magazines belonging to him but did not know the specifics of any allegations or investigations.

In ruling on the motion, the district court considered the former stepfather's testimony, police reports indicating that an investigation had occurred but that no charges were filed, and evidence admitted during the State's case-in-chief. That evidence included the CARES interview which was admitted at the trial in which the victim stated that she made the allegation when she was five or six years old, but no one believed her "because of the lies she told." After the CARES interview was published for the jury, the victim testified at trial as follows:

5

Q. [State] Okay. And I wanted to clarify some of the terms you used. So you said that you were raped. Okay.
   You also said that you were raped by your step-dad when you were 5 or 6, but then when you were asked specifically what that meant, you said he didn't put his penis in you. He was just rubbing in your area; right?

A. Yes.

On cross-examination, the victim then testified:

Q. [Defense Counsel] Okay. And you said that--you testified on direct that "No one really believed me," and that your dad [biological] made you tell lies?

A. Yes.

Q. Okay. So did your dad make you lie to get it dismissed? Make the whole thing go away?

A. No.

Q. He made you lie for it to occur?

A. Yes.

In a lengthy and detailed ruling from the bench, the district court concluded that the former stepfather could not be called as a witness regarding the allegedly false accusation and that Aldridge could not re-call the victim or her mother on that issue. This ruling had the effect of limiting the evidence of the allegedly false claim to evidence which had already been admitted, including the CARES interview and the victim's subsequent testimony. The district court concluded that, "it's simply not clear to the Court that it was something intentional on [the victim's] part, as a six-year-old, to intentionally make a false statement regarding the prior sexual conduct as contemplated by this rule." The district court also found the evidence had minimal relevancy, even if the falsity had been established, and the probative value did not outweigh the prejudicial effect.

On appeal, Aldridge asks this Court to reweigh the evidence and second guess the district court's conclusions by asking us to weigh the victim's credibility and evaluate the police reports and the stepfather's testimony. This Court will not substitute its view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *State v. Flowers*, 131 Idaho 205, 207, 953 P.2d 645, 647 (Ct. App. 1998). The district court was in the best position to interpret the evidence submitted during the I.R.E. 412 hearing and weigh the strength and credibility of the evidence and testimony. The district court precluded Aldridge from calling the stepfather to testify because the falsity of

the accusations had not been established. The district court reviewed those police reports which indicated there was insufficient evidence and that the victim could not "remember anything like that happening to her." The district court took judicial notice of the trial testimony of the victim and her mother. The district court also acknowledged the standard to be applied pursuant to I.R.E. 412 and the process it was required to follow. *See Chambers*, 166 Idaho at 845, 465 P.3d at 1084. The district court weighed Aldridge's burden and found the scales had not been tipped in favor of a finding of falsity.

The district court did not abuse its discretion in limiting evidence regarding a prior allegation of sexual misconduct because it recognized its discretion, acted within the boundaries of its discretion, acted consistently with the legal standards applicable to the specific choices available to it, and exercised reason in reaching its decision.

## C.     Remote Testimony

Prior to trial, Aldridge filed motions requesting that two of his anticipated witnesses be permitted to testify via Zoom. Aldridge contends the district court abused its discretion by allowing two of the State's witnesses to appear remotely but denying his motions. Aldridge argues that the disparate treatment was unfair. The State contends that Aldridge has failed to establish any legal entitlement for a witness to testify remotely and that, even if such entitlement existed, the district court did not abuse its discretion in not permitting the remote testimony.

While no Idaho case has directly addressed the question, it appears that whether to permit a witness to testify remotely is committed to the discretion of the trial court. *See State v. Fueller*, 173 Idaho 724, 736, 547 P.3d 1210, 1222 (Ct. App. 2024) (trial court has discretion to exercise reasonable control over the mode and order of examining witnesses (citing I.R.E. 611)). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Herrera*, 164 Idaho at 270, 429 P.3d at 158.

Aldridge filed motions for two witnesses to testify remotely. Only the testimony of an investigator retained by Aldridge is at issue in this appeal. It was alleged that the investigator could not testify in person because he had a training conference in Utah scheduled during the same

week as the trial. In his motion, Aldridge did not cite any relevant rule or case law supporting his request.

In denying the motion to allow remote testimony, the district court considered the information before it, indicating its preference for live testimony and by stating it was unclear what relevant testimony the investigator would be offering. The district court noted that the investigator was hired by Aldridge for investigative purposes and became a witness as a result. Given the longstanding trial setting, the district court concluded the investigator's presence was necessary under the circumstances and that arrangements to ensure the investigator's attendance should have been made. The district court also determined the testimony of the investigator involved potentially complicated explanations and exhibits pertaining to his investigations and that he was an important witness who had been involved throughout the case. The district court determined the investigator's testimony would be difficult to give remotely and gave Aldridge the option to provide a further showing of necessity or unavailability or to make a further record.

On appeal, Aldridge contends the district court abused its discretion in denying the motion for the investigator to testify remotely because he had a professional commitment that conflicted with trial. In support of his argument, Aldridge cites I.C.R. 43.1, although he did not cite the rule in support of his motion in the district court. Even assuming Aldridge could properly cite a rule-based reason for his motion for the first time on appeal, Aldridge's reliance on I.C.R. 43.1 is misplaced. Remote appearances are authorized by I.C.R. 43.1 for the defendant, not witnesses, which is perhaps the reason Aldridge did not rely on I.C.R. 43.1 in the district court. Aldridge's argument in the district court was instead primarily based on "fairness" because the district court ruled that one of the State's witnesses (a police officer) could testify remotely after having an unexpected surgery that rendered him medically incapable of walking or driving. However, the district court denied the State's request to have another witness testify remotely despite a family emergency requiring out-of-state travel and required that witness to testify in person. "Fairness" did not require the district court to allow a significant defense witness to appear remotely simply because the witness wanted to attend a "training conference" during the "same week." Contrary to Aldridge's arguments on appeal, under the circumstances, a training conference is not a "legitimate reason" to appear remotely, and the fact that the witness was "important" for the defense is a reason for the witness to appear in-person and be subject to cross-examination in the

8

jury's presence.  Moreover, Aldridge did not utilize the district court's option of providing a further showing of necessity for the investigator's remote testimony and did not make an additional record. Aldridge has failed to show an entitlement for any witness to testify remotely or articulate how the district court acted outside the boundaries of its discretion in denying his motion to allow the investigator to testify remotely.

**D.     Testimony By Lay Witness Re:  Text Manipulation**

After the trial commenced, the victim's mother discovered old text messages between herself and Aldridge.  These text messages were sent approximately nine months before the victim disclosed Aldridge's sexual misconduct.  In the text messages, Aldridge stated that he had ordered thong underwear for himself, the victim's mother, and the victim "since all of us like little or no underwear on."  The text messages included a photo of what was described as "Women's Sexy Pearls Ace C String Thong Invisible Underwear Lingerie."   Aldridge did not object to the admission of the late-disclosed text messages and they were admitted.  Aldridge later argued that the text messages were an inaccurate representation of the conversation.  He sought to call a lay witness, a personal acquaintance,[1] to demonstrate through an "experiment" she had conducted using her own cell phone which purportedly would have shown that a recipient could alter text messages using their cell phone.  The district court denied the request, explaining:

> We discussed the late-disclosure issue.  Counsel did not object as to that late disclosure and also did not object to [the text messages] admission into evidence as to authentication.  It's the--that's that they are unadulterated and have been modified in any respect and didn't raise that as an issue or foundational issue.
> So they've been admitted into evidence at this point.  Now, as I understand it, you are trying now to attack the authentication or validity of [the text] and argue that it may not be authentic, and it may have been tampered with in some respect.
> And trying to do that you through something of an "experiment," I guess, for lack of a better term, by [the lay witness] to simply show how can you change entries--excuse me, on a text message.
> And we don't have any expert testimony, I guess, to talk about any of this.
> And so, Counsel, I guess I'm just not seeing how I can allow you to go there. It just does not seem to be, from a foundational standpoint, from a relevance

---

[1]     The witness was more than an acquaintance.  She testified that she had most recently had sex with Aldridge two days prior to her testimony and that she had participated in a "threesome" with Aldridge and the victim's mother at some time in the past.

standpoint, from [the lay witness's] ability as an expert or otherwise, to show how text messaging can be theoretically modified.

Trial courts maintain broad discretion in admitting and excluding evidence. *Weigle*, 165 Idaho at 487, 447 P.3d at 935. A lay person may testify without being an expert witness so long as the testimony complies with I.R.E. 701, which states:

> If a witness is not testifying as an expert, testimony in the form of an opinion or inference is limited to one that is:
> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Aldridge has failed to show that the district court abused its discretion by excluding the proffered testimony about the text message "experiment" because the appellate record is insufficient to demonstrate error. The nature of the "experiment" was apparently displayed visually in the courtroom, but it is not part of the appellate record. *See State v. Repici*, 122 Idaho 538, 541, 835 P.2d 1349, 1352 (Ct. App. 1992) (holding that missing portions of the transcript on appeal are presumed to support the actions of the district court). Furthermore, even if the "experiment" showed that a text message can be altered by a recipient, there is, as argued by the State, an "underlying scientific basis with respect to matters such as how text messages are sent and displayed on phones, and how one can verify who created and sent particular text messages." This is the kind of evidence which is based on scientific, technical, or other specialized knowledge within the scope of I.R.E. 702 and excluded as opinion testimony when offered by a lay witness.

Aldridge contends the manipulation of text messages by a lay person is similar to the experiment by a lay person in *U.S. Bank Nat'l Ass'n N.D. v. CitiMortgage, Inc.*, 157 Idaho 446, 337 P.3d 605 (2014), where a paralegal was allowed to testify to an experiment she performed by scanning an image of a check using the office copy machine to determine whether staple holes were visible in the scanned image. Whether a document had been stapled to a particular check was a relevant fact to the case. The Idaho Supreme Court held the district court did not err by allowing the paralegal to testify to her own experiment which did not require any technical or specialized expertise. *Id.* at 452-53, 337 P.3d at 611-12.

10

The *U.S. Bank* case is distinguishable from the case at-hand. Using applications and software on a phone requires some level of technical knowledge, unlike using a copy machine. Furthermore, an expert would be able to testify not only about the process of manipulating text messages but also about methods to determine if text messages actually had been manipulated, any visible differences that may exist between original images and altered images and could have provided an opinion regarding whether the text images at issue had been modified. The lay witness in this case was not qualified to speak to technological issues and could only provide speculative testimony that it was possible the text messages had been altered, which would not help determine a fact and would only serve to confuse the issue. Additionally, in *U.S. Bank*, the relevancy of the staple holes was not challenged--unlike here where the relevancy of the lay witness's testimony was disputed. The district court did not abuse its discretion in precluding the lay witness from testifying about her experiments with the text messages.

### E.       Amended Information

The information was filed on November 15, 2021, and alleged that Aldridge committed lewd conduct on or about or between November 1, 2020, and November 30, 2020. This was consistent with the victim's statement in the CARES interview that the conduct occurred "around November." On September 8, 2022, the State filed a motion to file an amended information to "correct errors" in the date of the incident, alleging that it occurred on or about or between August 1, 2020, through November 30, 2020. Trial was scheduled to commence on November 18, 2022.

Aldridge contends the district court erred by granting the State's motion to amend the information to broaden the timeframe of when the offense occurred. Aldridge argues that broadening the timeframe prejudiced his substantial right to present an alibi defense. The factual basis for Aldridge's alibi was not disclosed in his objection or at the hearing. On appeal, Aldridge argues that it was based upon the victim's mother's testimony that she went with Aldridge to retrieve the travel trailer for the season on November 2, 2020. The State contends the district court acted within its discretion and that Aldridge's substantial rights were not violated because the trial was continued to give him time to prepare a defense for the expanded timeframe.

Under I.C. § 19-1420, an amendment to the information is permitted "in the discretion of the court, where it can be done without prejudice to the substantial rights of the defendant." The

11

information cannot be amended to charge a new or additional offense.  I.C. § 19-1420; I.C.R. 7(e).  Factors relevant to determining whether the defendant was prejudiced include whether the amendment surprised the defendant, impaired the defendant's ability to adequately prepare a defense, necessitated extensive further preparation by the defendant, or subjected the defendant to double jeopardy.  *State v. Jeske*, 164 Idaho 862, 871, 436 P.3d 683, 692 (2019).  The Idaho Supreme Court has held that "time is not a material ingredient in the offense of lewd and lascivious conduct with a minor."  *State v. Tapia*, 127 Idaho 249, 253, 899 P.2d 959, 963 (1995).  This is because any other rule would too often preclude prosecutions in this type of case where the victims are minors and where the crimes are not discovered until sometime after their commission.  *State v. Roberts*, 101 Idaho 199, 200, 610 P.2d 558, 559 (1980).  The assertion of an alibi defense does not make time a material element of the offense that must be proven by the State when a defendant has had a close association with the minor over a lengthy time period.  *State v. Marks*, 120 Idaho 727, 729, 819 P.2d 581, 583 (Ct. App. 1991).

In granting the motion, the district court acknowledged its discretion to grant an amendment and the applicable case-law and court rules.  The district court noted that the charges remained the same, with nothing being added or modified, and it was only the timeframe that changed.  The district court continued the trial in order to provide Aldridge additional time to prepare.  Ultimately, the trial commenced on March 28, 2023.  Aldridge contends the district court abused its discretion in granting the amendment.  We disagree.

The district court acted within the boundaries of its discretion when it considered the nature of the charges, the age of the victim, and the case law.  The district court acted consistently with the legal standards applicable to the choices available to it because Idaho courts have recognized young victims often struggle with the ability to recall exact dates and expanding the timeframe is reasonable.  *See, e.g., Tapia*, 127 Idaho at 253, 899 P.2d at 963.  The district court reached its decision through the exercise of reason, recognizing that the victim's age at the time of events may have made it difficult to pinpoint an exact date.  The district court's granting of the amendment did not prejudice Aldridge's substantial rights to present his alibi defense because he was granted ample additional time to adequately prepare a defense--a point he does not dispute on appeal.  The district court did not abuse its discretion.

**F.     Cumulative Error**

Aldridge also contends that the cumulative error doctrine applies here.  Under the doctrine of cumulative error, a series of errors, harmless in and of themselves, may in the aggregate show the absence of a fair trial.  *State v. Adamcik*, 152 Idaho 445, 483, 272 P.3d 417, 455 (2012). However, a necessary predicate to the application of the doctrine is a finding of more than one error.  *Id.*  Aldridge has failed to demonstrate error, a necessary predicate to the application of the cumulative error doctrine.

## IV.

## CONCLUSION

Aldridge did not preserve his argument on appeal challenging the admission of the State's I.R.E. 404(b) evidence regarding uncharged sex crimes.  Aldridge has failed to show that the district court abused its discretion in limiting the introduction of prior allegedly false accusations, denying Aldridge's motion to permit witnesses to testify remotely, precluding a lay witness to testify under I.R.E. 702, or granting the State's motion to amend the information.  Finally, because Aldridge has failed to show any error, the cumulative error doctrine does not apply.  Therefore, Aldridge's judgment of conviction for lewd conduct with a minor under sixteen and being a persistent violator is affirmed.

Judge TRIBE, **CONCURS**.

Judge LORELLO, **SPECIALLY CONCURRING.**

I concur with the decision to affirm Aldridge's judgment of conviction.  I write separately with respect to the resolution of Aldridge's challenge to the admission of evidence pursuant to I.R.E. 404(b) because, in my view, the issue is preserved for appeal.

As required by I.R.E. 404(b), the State filed a notice of its intent to introduce evidence of prior sexual contact between Aldridge and the victim as well as evidence of incidents the State contended would show "anger, control, and dominance" over the victim.  Absent good cause, a prosecutor must file such a notice (or motion) prior to trial in order to notify the defendant of the State's intent to introduce evidence covered by the rule.  The pretrial aspect of this notice requirement does not mean the notice qualifies as a motion in limine even though both "motions" seek to obtain a pretrial ruling on the admissibility of evidence.  If a motion in limine is aimed at *excluding* evidence, the law is clear that a trial court may delay ruling on the motion until trial and,

13

if the trial court does so, the party seeking exclusion must continue to assert an objection in order to preserve the issue for consideration on appeal. *See State v. Rodriguez*, 132 Idaho 261, 265, 971 P.2d 327, 331 (Ct. App. 1998). The reason a ruling on a motion in limine may be deferred until trial is to afford the trial court the ability to assess admissibility in the context of the evidence actually presented. *See State v. Radue*, 175 Idaho 297, 304, 564 P.3d 1230, 1237 (2025).

But I.R.E. 404(b) motions/notices are different for at least two reasons. First, motions in limine are based on an alleged set of facts rather than the actual testimony. *Radue*, 175 Idaho at 304, 564 P.3d at 1237; *State v. Young*, 133 Idaho 177, 179, 983 P.2d 831, 833 (1999). Idaho Rule of Evidence 404(b) evidence is more definitive because it is based on more than just alleged facts--it involves actual evidence of a prior crime, wrong, or act. Second, although a defendant will almost always object to the admission of I.R.E. 404(b) evidence, a motion to *admit* evidence pursuant to I.R.E. 404(b) motion is not an *objection by* the defendant. There is no clear reason why a defendant would have to "object" again at trial after objecting to the State's request to admit in the first instance. Indeed, the framework for evaluating the admissibility of I.R.E. 404(b) evidence is especially conducive to a determination without the need for "context" at trial. This makes sense given the propensity concerns that underlie the rule--the point is to prevent any reference to I.R.E. 404(b) evidence unless there is a proper purpose for its admission.

The now familiar I.R.E. 404(b) framework requires the trial court to assess three things: (1) whether there is sufficient evidence to establish the other crime, wrong, or act as fact; (2) whether the other crime, wrong, or act is relevant for a permissible purpose; and (3) whether the danger of unfair prejudice substantially outweighs the probative value of the evidence. *State v. Grist*, 147 Idaho 49, 52, 205 P.3d 1185, 1188 (2009). It is unclear to me how a trial court could rely on the evidence presented *at trial* to determine whether there is sufficient evidence of the other crime, wrong, or act without violating the *Grist* framework. Stated differently, a trial court could not rely on evidence of the other crime, wrong, or act presented at trial in order to determine whether the other crime, wrong, or act should be admitted in the first instance. That said, the first requirement is often not at issue; in which case, the next step in the analysis is to determine whether the other, crime, wrong, or act is relevant for a permissible purpose. But it is equally unclear to me why this determination could not (and should not) be made based on the I.R.E. 404(b) motion itself. This is true even if the determination was conditional, e.g., if X happens then the evidence

14

is admissible to prove Y. Indeed, it appears, to some extent, that is partly what happened in this case.

At the I.R.E. 404(b) hearing, the prosecutor argued: "It's the same type of behavior for a long period of time, although most of it was in Jefferson County and not in Custer County. There's only one instance in Custer County. Clearly that shows the opportunity . . . where it's permitted under [I.R.E.] 404(b)." Aldridge responded: "I don't think it's realistic to say that it's admissible to show opportunity unless [Aldridge] was to present evidence that he wasn't there or that he never was alone with [the victim], something like that." And the prosecutor ultimately acknowledged that some of the I.R.E. 404(b) evidence was "probably not admissible right off the bat in the State's case in chief" and would only be admissible if Aldridge "open[ed] that door." The district court responded, in part, that it would be "in favor" of admitting prior instances of conduct if offered for a proper purpose and that it would "go through" the I.R.E. 403 analysis "at that time," referring to when the evidence was presented at trial.

A ruling that evidence of a prior crime, wrong, or act is admissible for a particular purpose, such as opportunity, if the defendant denies opportunity is a ruling that could be reviewed on appeal. *See State v. Miramontes*, 170 Idaho 920, 924-25, 517 P.3d 849, 853-54 (2022) (holding that "a party preserves an issue for appeal by properly presenting the issue with argument and authority to the trial court below and noticing it for hearing *or* a party preserves an issue for appeal if the trial court issues an adverse ruling"). That is not to say that a preservation issue could not exist in this context; it could. For example, if the defendant *agreed* that a prior crime, wrong, or act would be admissible to prove opportunity if he or she was denied opportunity at trial, he or she could not complain about that concession on appeal because the alleged error would be invited. *See State v. Atkinson*, 124 Idaho 816, 819, 864 P.2d 654, 657 (Ct. App. 1993) (explaining the doctrine of invited error applies to estop a party from asserting an error when his or her own conduct induces the commission of the error). While the context of what happened at trial would matter in terms of whether the condition for admission was satisfied, the context would not change the reviewability of the ruling or the application of the invited error doctrine.

For the foregoing reasons, I would not resolve Aldridge's challenge to I.R.E. 404(b) on the basis that it is unpreserved based on his failure to again object to the evidence at trial. Instead, I would address the merits of his challenge and hold the evidence was properly admitted. But,

15

because the reasons I would hold as much do not change the outcome of this case, I need not detail them here.